Argued and submitted July 27, reversed December 21, 1981,
reconsideration denied March 23,
petition for review denied April 20, 1982 (292 Or 863)

# DANIEL WAYNE HOWE,
*Respondent,*

*v.*

# CUPP,
*Appellant.*

## (No. 113,752, CA A20299)

637 P2d 933

Richard David Wasserman, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Jossi Davidson, Silverton, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant was convicted of robbery in the second degree, and on appeal his conviction was affirmed. *State v. Howe*, 32 Or App 178, 573 P2d 780 (1978).[1] He petitioned for post-conviction relief, alleging multiple claims of ineffective assistance of counsel and prosecutorial misconduct. The post-conviction court concluded that, while no single claim of defendant warranted a new trial,[2] the cumulative effect of the trial's numerous shortcomings was to deny defendant a fair trial.[3] It granted defendant's petition and

---

[1] On direct appeal defendant's sole assignment of error was the trial court's denial of his motion for a mistrial.

[2] Defendant made 31 claims of ineffective assistance of counsel. The post-conviction court concluded:

"The majority of [defendant's] claims in [the] category [of ineffective counsel] are repetitious of other stated claims, contrary to uncontroverted evidence, unsupported by the credible evidence, without legal foundation, or non-prejudicial [except for possible cumulative effect].

"* * * * *

"As to the claims concerning trial counsel's failure to act [failure to gain adequate discovery, failure to ask for instructions, etc.], the Court is unpersuaded that such alleged failures constituted incompetence or were prejudicial in the circumstances of this case and the crushing evidence of [defendant's] guilt.

"* * * * *

"* * * After a hearing outside the presence of the jury, the experienced trial judge ruled that the [photographic identification] procedure was not impermissibly suggestive nor did it taint the in-court identification by the two witnesses. * * *

"* * * * *

"* * * [T]here was one reference to 'mug shots' but it was a passing reference and insufficient to constitute cognizable error. * * *

"* * * [J]ury knowledge that [defendant] had been arrested for a minor crime two days before the perpetration of this crime was not a fundamental error depriving [defendant] of a fair trial."

[3] The post-conviction court reasoned:

"Although this Court has found that no one, single claim of [defendant] is sufficient to grant the relief [defendant] seeks, the multiple shortcomings of his trial effectively deprived [defendant] of a fair trial. * * * The Court has not reached this decision because of the fusillade of claims under the theory of 'Where there is smoke, there is fire'. Rather, as has been noted, there are half-a-dozen claims of substantial merit and it is these that form the basis of this Court's conclusion.

"While the evidence of [defendant's] guilt is overwhelming and a retrial of the case is not likely to result in a finding of innocent, [defendant] is entitled to a fair trial and he did not receive one."

ordered a new trial. The state appeals. ORS 138.650. We reverse.

■　　ORS 138.530(1)(a) authorizes post-conviction relief when there was a "substantial denial" of constitutional rights at the trial which resulted in the conviction. Defendant first contends that mistakes and omissions by his trial counsel deprived him of his constitutional right to the effective assistance of counsel. Many of the deficiencies alleged by defendant are unsupported by the record. Others are matters of trial strategy which reflect the exercise of reasonable professional skill and judgment. *Rook v. Cupp,* 18 Or App 608, 526 P2d 605 (1974); *see Krummacher v. Gierloff,* 290 Or 867, 627 P2d 458 (1981). Still others are instances of arguably improper conduct which, when viewed in the light of the substantial evidence produced against defendant, were harmless beyond a reasonable doubt.[4] *Chapman v. California,* 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705 (1967); *State v. Lucy,* 49 Or App 285, 619 P2d 670, *rev den* 290 Or 519 (1980).

　　Two specific claims, however, merit further consideration. First, defendant contends that he informed defense counsel at their first meeting that he was with his girlfriend at the time of the robbery. Despite the obviously critical nature of the girlfriend's testimony and the fact that she was easy to contact, defense counsel failed to speak with her at all until the trial was underway.[5] Second, when

---

[4] Both victims of the robbery positively identified defendant. In addition, two accomplices implicated defendant in the crime. The post-conviction court found that there was "crushing evidence of [defendant's] guilt," and "overwhelming evidence against [defendant's] alibi," and that "the evidence of [defendant's] guilt is overwhelming and [that] a retrial of the case is not likely to result in a finding of innocent."

[5] In an affidavit submitted to the post-conviction court, defense counsel stated:

"* * * * *

"* * * I did have some problem developing a trial strategy. Mr. Howe advised me that he did have an alibi which could be established through a young lady with whom he was living and certain other people in the Pendleton area. Through Mr. Dick's efforts, contact was made with as many people as could be found in the Pendleton area regarding Mr. Howe's alibi. * * * [N]one of the people he contacted were able to give information which would have supported an alibi.

the prosecutor became aware that defendant's girlfriend might provide alibi testimony, he advised defense counsel that, if she testified she was with defendant at the time of the robbery, he would prosecute her for perjury. The prosecutor expected this intent would be made known to the girlfriend, and it was. Upon learning of the prosecutor's intentions, the girlfriend told defense counsel that she was not with defendant at the time of the robbery. Because that testimony would not have been helpful, the girlfriend was not called as a defense witness. The girlfriend now claims that she was with defendant at the time of the robbery and that she understood the prosecutor's statement to mean

---

"On the second day of trial, I did meet with Mr. Howe's girl friend in the courthouse in The Dalles and discussed the facts concerning Mr. Howe's alibi. In the course of the conversation with Mr. Howe's girl friend, I did advise her that the district attorney had advised me that if she took the stand and testified that she was with Mr. Howe in Pendleton on the night of the armed robbery, he was going to present the matter to the grand jury with regard to a possible perjury charge. Since Mr. Howe's two codefendants had both confessed and identified Mr. Howe as the third participant and since the nurses on duty at the hospital had identified Mr. Howe, I felt that it was necessary that I advise Mr. Howe's girl friend on what the district attorney had told me. I also advised her that, if Mr. Howe was with her on the night of the robbery, that I was to call her to establish this testimony because of its obvious worth to Mr. Howe's defense. After this conversation, Mr. Howe's girl friend advised me that she was not with Mr. Howe on the night of the robbery but that she felt that he had not done it. Obviously, my alibi strategy died with this disclosure by Mr. Howe's girl friend.

"I did have an alternate strategy in that I hoped to convince the jury that the state had not made their case with regard to a first degree robbery offense. Once it became apparent that Mr. Howe's girl friend would not substantiate any alibi defense, this was the primary thrust of my argument in the case. * * *

"* * * * *

"* * * I do recall that Bill Dick subpoenaed some witnesses and contacted a number of others but discovered that these witnesses would not be helpful to any alibi defense.

"* * * * *

"* * * I did not make an opening statement on the defendant's behalf because I didn't want to tell the jury that we had an alibi when none of the witnesses I had been able to contact could substantiate such an alibi."

In a second affidavit, defense counsel stated:

"* * * Jo Ann Whitman was subpoenaed for trial. My first conversation with her was on the third day of trial, just prior to presenting the defense case. * * *"

that if she testified *at all,* she would be prosecuted and would "end up going to jail."[6]

■■ In *Krummacher v. Gierloff, supra,* 290 Or at 875, the Supreme Court observed that defense counsel:

> "* * * must investigate the facts and prepare himself on the law to the extent appropriate to the nature and complexity of the case so that he is equipped to advise his client, exercise professional judgment and represent the defendant in an informed manner."

Defense counsel should have contacted defendant's girlfriend before the trial. However, in the context of this case, failure to contact the witness before the trial was not prejudicial, because, when she was contacted, she told defense counsel that she was not with defendant on the night of the crime. Defendant was not entitled to have the witness give perjured alibi testimony. Defense counsel's arguable dereliction of duty was therefore not prejudicial. The post-conviction court found that

> "* * * [i]f the [prosecutor's warning of possible perjury charge against defendant's girlfriend] happened as the District Attorney and trial counsel report, there was no impropriety. In the light of the overwhelming evidence against [defendant's] alibi, the District Attorney had every right (and perhaps an obligation) to inform the alibi witness that perjury was a crime and would be prosecuted."

We interpret this as a finding by the post-conviction court that the alibi testimony of defendant's girlfriend as reflected in her affidavit would not be credible, a finding which is binding on this court. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

■■ Our review in post-conviction proceedings is limited to questions of law. ORS 138.650; ORS 138.220. Our duty is to determine whether the conclusion drawn by the trial court from the facts found, *i.e.,* that "the cumulative effect of the trial's numerous shortcomings was to deny defendant

---

[6] In an affidavit submitted to the post-conviction court, the girlfriend stated that she:

> "* * * had the definite impression at the time that if I testified I would face criminal charges and end up going to jail. After I was told this I became afraid to testify that I was with Dan at the time of the crime."

a fair trial," is supported by the record. *Miotke v. Gladden,* 250 Or 466, 468, 443 P2d 617 (1968). We find that it is not.

Reversed.