STATE OF OREGON,
*Respondent,*

*v.*

WILLIAM HOWARD HUFFMAN,
*Appellant.*

(10-81-04620; CA A24490)

672 P2d 1351

James C. Niedermeyer, Portland, argued the cause for appellant. With him on the brief was William C. Berkshire, Eugene.

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Newman, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant was charged with perjury and conspiracy to commit perjury. He was found guilty of both charges by a jury; however, the court "merged" the conviction for conspiracy with the perjury conviction. Defendant appeals only the perjury conviction, asserting that prosecutorial misconduct requires dismissal and that erroneously admitted evidence justifies a new trial. We affirm.

We take the following facts primarily from the pretrial hearing on defendant's motion to dismiss. The conspiracy count alleged that defendant, James Huffman, defendant's nephew, and James' wife Claudia conspired to commit perjury. The perjury for which defendant was convicted was alleged to have taken place in a trial in the Eugene Municipal Court in November, 1980, involving a traffic charge against defendant. At that trial, James Huffman testified that defendant was not driving, but that he, James, was the driver at the time of the incident. Defendant's wife and James' wife gave corroborating testimony. Kip Leonard, who prosecuted the case for the city of Eugene, suspected that James and defendant had not told the truth. In April, 1981, James contacted Leonard and told him that defendant had paid him $3,000 to testify falsely in the municipal court trial. Leonard related this information to the Lane County District Attorney's office, and defendant was eventually charged with perjury and conspiracy to commit perjury. On January 25, 1982, the parties reported ready for the trial which was to commence on February 3, 1982. Between January 26 and January 28, three witnesses, all related to defendant, came to the district attorney's office and reported that the witnesses for defendant were being paid to testify falsely at the perjury trial. The prosecutor decided at that point to present evidence to the grand jury and seek an indictment charging defendant with conspiracy to commit perjury in the upcoming perjury trial.

Defense counsel had arranged for the prosecutor assigned to the case to meet with the defense witnesses at defense counsel's office to interview them for discovery purposes. The meeting was scheduled for January 28. The prosecutor went to the meeting with a Eugene police officer. Before interviewing the witnesses, the district attorney told

defense counsel that he had reliable information that some or all of the witnesses had been paid to testify for defendant. Defense counsel suggested that the witnesses be interviewed in his office. The prosecutor informed all potential defense witnesses assembled in the office that he had reliable information that there was a conspiracy to commit perjury and that the witnesses were being paid, or would be paid, to testify favorably for defendant. The prosecutor then had the police officer issue subpoenas to appear before the grand jury for the following day to all the defense witnesses assembled in the attorney's office. The prosecutor informed them that if they decided not to perjure themselves, or if they decided that there was a conspiracy and that they wished to withdraw, they should do so before the grand jury appearance the next day. He also advised the witnesses that they could seek independent counsel if they desired to do so. Defense counsel told the prosecutor that he had decided not to call two of the witnesses. The prosecutor told them that they would not be needed at the grand jury hearing the next day.

During the grand jury proceedings that began January 29, two of the witnesses were questioned by the same prosecutor who was trying the perjury case. On January 29, defendant filed a motion for dismissal and in the alternative for a mistrial on constitutional and other grounds, and the motion was denied prior to trial on February 3, 1982. Defendant renewed the motion after the close of the state's case, and it was again denied. In rebuttal, the state called the grand jury foreman who testified, over objection based on relevance and hearsay, regarding Raymond Huffman's testimony before the grand jury.

■ In his first two assignments of error, defendant contends that his motions for dismissal should have been granted. He alleges prosecutorial misconduct and makes several statutory and constitutional arguments regarding the state's conduct toward defendant's witnesses and its use of the grand jury. Defendant first asserts that the prosecutor's conduct amounts to a violation of the discovery statutes. ORS 135.805-135.873. The thrust of the argument appears to be that the prosecutor was able to question defense witnesses under oath before the grand jury and thereby compel them to answer, while defendant did not have a reciprocal right to question prosecution witnesses under oath. Defendant does

not claim that he was provided inadequate discovery or suggest what additional benefit he would have obtained by compelling prosecution witnesses to answer his questions under oath. Nothing in the discovery statutes prevents the state from initiating a grand jury investigation of possible criminal activity. There was no violation of the discovery statutes.

Defendant argues that the prosecutor's conduct intimidated and threatened defense witnesses and deprived him of compulsory process under the Oregon and federal Constitutions. The Oregon Constitution, Article I, § 11, provides:

> "In all criminal prosecutions, the accused shall have the right to * * * have compulsory process for obtaining witnesses in his favor * * *."

The Sixth Amendment to the United States Constitution is almost identically worded[1] and applies to the states through the Due Process Clause of the Fourteenth Amendment. *Washington v. Texas,* 388 US 14, 87 S Ct 1920, 18 L Ed 2d 1019 (1967). The Oregon Supreme Court recently addressed the Oregon constitutional provision in *State v. Mai,* 294 Or 269, 272, 656 P2d 315 (1982):

> "The right to subpoena a witness into the courtroom is an empty right absent the related right to obtain the testimony of the witness. We have no hesitation in concluding that the clause protects both the right to the attendance of the witness and the testimony of the witness. In this respect, we construe the state compulsory process clause in the same way as the Supreme Court construed the virtually identical federal counterpart in *Washington v. Texas,* 388 US 14, 87 S Ct 1920, 18 L Ed 2d 1019 (1967). * * *"

In *Washington v. Texas, supra,* the Supreme Court stated:

> "The Framers of the Constitution did not intend to commit the futile act of giving to a defendant the right to secure the attendance of witnesses whose testimony he had no right to use." 388 US at 23.

---

[1] The Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have compulsory process for obtaining witnesses in his favor. * * *"

Later federal cases also indicate that the clause protects a defendant from loss of defense witness testimony through improper government interference. *See, e.g., United States v. Morrison,* 535 F2d 223 (3rd Cir 1976); *Anderson v. Warden, Maryland Penitentiary,* 696 F2d 296 (4th Cir 1982), *cert den* 462 US 1111 (1983). It is not necessary that the witness refuse absolutely to testify in order to find that defendant's rights were denied. *United States v. Morrison, supra,* 535 F2d at 226.

We are aware of no Oregon case indicating that federal constitutional precedents should not be followed in interpreting the Compulsory Process Clause generally; nor do we see any reason not to follow federal precedent in this case. We consider the two constitutional provisions in the same discussion. Defendant's due process argument derives from a claimed violation of the Compulsory Process Clauses and the analysis is the same. *See Webb v. Texas,* 409 US 95, 93 S Ct 351, 34 L Ed 2d 330, 333 (1972).

We conclude that, under the facts of this case, defendant's constitutional rights have not been denied. The kind of government interference with a defendant's right to present witnesses in his behalf amounting to a violation of the Sixth Amendment and the Due Process Clause has been variously described. The Fourth Circuit Court of Appeals found unconstitutional conduct that "blatantly interfered with [defendant's] Sixth Amendment right to freely present the testimony of * * * witnesses." *Anderson v. Warden, Maryland Penitentiary, supra,* 696 F2d at 299. The Fifth Circuit Court of Appeals stated that "substantial government interference with a defense witness' free and unhampered choice to testify" violates due process, *United States v. Hammond,* 598 F2d 1008, 1012 (5th Cir 1979), and the Third Circuit considered defendant's rights to be violated "where the government has prevented the defendant's witness from testifying freely before the jury * * *." *United States v. Morrison, supra,* 535 F2d at 228; *see also United States v. Simmons,* 699 F2d 1250, 1251 (DC Cir 1983); *United States v. Vargas-Rios,* 607 F2d 831, 838 (9th Cir 1979); *United States v. Harlin,* 539 F2d 679, 681 (9th Cir), *cert den* 429 US 942 (1976).

Defendant does not suggest that any of his witnesses declined to testify, but does stress that the witnesses testified that they were affected by the prosecutor's conduct. The trial

court found that the prosecutor's actions did not affect the testimony of the witnesses, and we are bound by that finding if it is supported by the evidence.[2] *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). Although more than one of the witnesses testified that his testimony was affected,[3] we conclude that the trial court's finding was supported by the evidence.

Defendant appears to argue, however, that conduct such as occurred here will be presumed to be prejudicial and require reversal, regardless of its actual effect on the witnesses' testimony. In *Webb v. Texas, supra,* the trial judge admonished the only defense witness that, if he lied under oath the court would personally see that his case went to the grand jury and that, if he were convicted for perjury he would probably have to serve more time and receive less favorable consideration when he was up for parole. The witness then declined to testify. The Supreme Court disagreed with the finding of the Court of Appeals that there was no showing that the witness had been intimidated, concluding that the facts "strongly suggest" that the judge's comments caused the witness' refusal to testify. 409 US at 98.

Defendant stresses that some federal courts following the *Webb* rationale have held that intimidation of defense witnesses requires reversal without a showing of prejudice. *See, e.g., United States v. Hammond, supra,* 598 F2d at 1013;

---

[2] The court stated:

"I fail to find any purposeful prosecutor misconduct. I fail to find any prosecutor misconduct. And I also fail to find any effect to whatever Mr. Nissman did. No witnesses testified that they would not be here, were scared away, or would not cooperate with defense counsel any more."

[3] For instance, Ray Huffman testified:

"Q. Do you — and you're the only one that can answer this question. Has this in any way materially affected your testimony, if you had not been brought before the Grand Jury?

"A. Yes, it has.

"Q. And has it made you more cautious and, even in the minutest detail, in regard to your testimony?

"A. Yes, it has, very much so."

On cross-examination, he said:

"Q. How is your testimony going to be different?

"A. Well, before I could sit here and tell you the story, how it happened, and be relaxed about it. But now I can't, with this threat hanging over my head."

*United States v. Morrison, supra.* Defendant cites no case, and we are aware of none, in which a court found a violation of the constitution without finding some effect on a defense witness' testimony. In *Morrison,* cited by defendant, the United States attorney sent defendant's primary witness a warning that she was liable to be prosecuted on drug charges and that federal perjury charges could be brought against her. He then sent the witness a "subpoena," and she was brought to his office where, in the presence of three officers who had served as undercover agents, he warned her of the dangers of testifying and that she could be prosecuted on drug and perjury charges. Although the witness took the stand, she refused to answer many questions on self-incrimination grounds. The court in *Morrison* stated that it would not consider the effect of the witness' testimony on the verdict, and it considered the trial court's finding that the prosecutor's actions had caused the witness not to testify to be "mandated by the burden of proof established for such a question in *Webb.*" 535 F2d at 227.

In *Berg v. Morris,* 483 F Supp 179 (ED Cal 1980), also cited by defendant, the trial judge warned a defense witness that his probation would be revoked if he did not tell the truth, indicated that he did not believe the witness was telling the truth and had him jailed over the weekend, after which the witness changed his story. The court found that the judge's conduct "so interfered with the petitioner's right to present witnesses in his own defense as to amount to a denial of due process." The court concluded that under *Webb* it was not necessary for defendant to establish that the judge's conduct *caused* the witnesses change in testimony.

■ We do not consider the holdings in these cases to require reversal here. Even if defendant were not required to prove that the government's conduct *caused* the loss of testimony, or that the loss of testimony prejudiced his defense, we conclude that he must demonstrate that *some testimony of his witnesses was affected.* In *United States v. Valenzuela-Bernal,* 458 US 858, 102 S Ct 3440, 73 L Ed 2d 1193 (1982), the defendant claimed his Sixth Amendment rights were violated when the government deported a defense witness because he was an illegal alien. The court rejected the claim and said:

> "* * * [O]ther interests protected by the Sixth Amendment look to the degree of prejudice incurred by a defendant as a result of governmental action or inaction.

"'\* \* \* \* \*

"Having borrowed much of our reasoning with respect to the Compulsory Process Clause of the Sixth Amendment from cases involving the Due Process Clause of the Fifth Amendment, we have little difficulty holding that at least the same materiality requirement obtains with respect to a due process claim. Due process guarantees that a criminal defendant will be treated with 'that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.' Lisenba v. California, 314 US 219, 236[, 62 S Ct 280, 86 L Ed 166] (1941). \* \* \*" 458 US at 869-70.

It is doubtful that the federal cases cited by defendant have vitality after the decision in *Valenzuela-Bernal.* In this case, the witnesses took the stand, and the trial court found that their testimony was not affected by the prosecutor's conduct.

■ We do not rule out the possibility of situations arising where the government's conduct is so outrageous that we would consider defendant's rights to have been violated regardless of any showing of effect on the testimony of defendant's witnesses. We do not find the prosecutor's conduct to be so outrageous here. Warning of the possible consequences of perjury is not sufficient to constitute a deprivation of constitutional rights. *United States v. Harlin, supra,* 539 F2d at 681; *see also, Howe v. Cupp,* 55 Or App 247, 637 P2d 933 (1981), *rev den* 292 Or 863 (1982). The prosecutor did not warn against *testifying,* but only against perjury. *See United States v. Bettencourt,* 614 F2d 214, 216 (9th Cir 1980) (prosecutorial misconduct must be "flagrant" to violate due process).

■ In summary, in order to establish a violation of the Compulsory Process or Due Process Clauses a defendant must show some effect on the witness' testimony, at least when government conduct alleged to have interfered with the defendant's ability freely to present witnesses in his favor is not outrageous. *See State v. Brock,* 53 Or App 785, 633 P2d 805 (1981), *aff'd* 294 Or 15, 653 P2d 543 (1982).

In the next assignment of error defendant challenges the admissibility of James' testimony regarding an incident

that took place in February, 1981, almost four months after the municipal court trial, while the conviction was on appeal. He testified, over objection, that defendant had stated that he wanted James and his brother to "get rid of" one Maltby, a state's witness in the municipal court trial. When James told defendant that he was "nuts," defendant began choking and beating him. James ran down the road, hid in the weeds and waited for his wife to pick him up. While waiting, he was intentionally run over by defendant in his pick-up. His injuries required hospital treatment. James testified that that incident (among other factors) frightened him and his wife and convinced him to go to the authorities. He stated:

> "* * * I couldn't see going ahead and testifying for Howard. If he ran over me once, what's he going to do the next time? And my wife was scared to death. The kids wouldn't open the curtains. She had to walk them to school. If she didn't, one of the neighbor kids would. They wouldn't answer the door. Enough's enough."

Defendant objected to the testimony on the basis that it was irrelevant because it concerned events that took place after the alleged perjury and conspiracy to commit perjury. He also argued that its prejudicial nature outweighed any probative value. James testified that, during the discussion which led to defendant's request that he get rid of the witness, defendant had discussed the possibility of a new trial if the traffic offense conviction were reversed on appeal. Defendant stated that Maltby was the only witness against him. The evidence discloses a continuing conspiracy and plan for defendant to avoid being penalized for the traffic offense. The testimony was relevant circumstantial evidence of the conspiracy alleged in the indictment. We disagree with defendant's argument that the evidence was irrelevant because it took place long since the date of the alleged perjury. The length of time after the alleged perjury does not defeat its tendency to show that defendant was involved in concealing evidence of his involvement in the traffic offense.

In addition, because James' credibility was a primary issue at the perjury trial, the evidence tended to explain why he recanted his testimony given in the municipal court trial, reported the perjury to the prosecutor and agreed to testify against defendant.

Defendant contends that the prejudicial nature of the testimony outweighed its relevance under OEC 403. The balancing of these factors is a matter of discretion for the trial court. *State v. Hall,* 36 Or App 133, 136, 583 P2d 587 (1978). We conclude that there was no abuse of discretion. As we stated in *State v. Ritchie,* 50 Or App 257, 260, 622 P2d 768 (1981):

> "* * * Factors to be considered in determining whether the probative value of relevant evidence outweighs any prejudicial impact it may have are: (1) the need for the evidence; (2) its persuasiveness; and (3) its inflammatory effect upon the jury. * * *" (Citations omitted.)

*See also State v. Sjogren,* 39 Or App 639, 643, 593 P2d 1188 (1979).

The legislative commentary to OEC 403 states that:

> " 'Unfair prejudice,' in the context of ORE 403, means an undue tendency to suggest decisions on an improper basis, commonly although not always an emotional one. * * *"

The evidence in question here would arguably tend to influence the jury to decide improperly against defendant because it could affect the impression of his character. However, we agree with the trial court that any tendency to prejudice *unduly* was outweighed by its relevance. Thus, we will not disturb the trial court's ruling.

■ Defendant's other assignments of error challenge the admissibility of testimony regarding statements by defendant's wife. James testified that, right after the municipal court trial, he, his wife, defendant and his wife were at a restaurant with the defense attorney in the case. James testified that defendant's wife asked the attorney what it would cost for her husband to "buy his way out of this," indicating they would "buy" a judge, prosecutor or whomever it was necessary to "buy."

Defendant argues that the evidence was inadmissible, because it was the statement of a co-conspirator after the conspiracy had ended. We assume that this argument goes to defendant's ground for objection, which was relevance. Defendant argues that, because the alleged perjury would already have taken place at the trial, the conspiracy was at an end at the time of his wife's statement. A conspiracy continues until

its objects have been achieved. *State v. Davis,* 19 Or App 446, 450, 528 P2d 117 (1974); ORS 161.465(1).[4] Although we would not infer a perpetual conspiracy, *see State v. Davis, supra,* we do not consider the act of perjury at the trial to have been the complete object of the conspiracy. The object of the conspirators was that defendant avoid punishment for the traffic offense. Evidence of additional acts in furtherance of that goal, taking place the night after the trial, was admissible. *State v. Greenwood,* 22 Or App 545, 540 P2d 389, *rev den* (1975). The jury was even entitled to infer that defendant's wife's interest in "buying" the judge or prosecutor included a desire to conceal the perjury by avoiding a judgment inconsistent with defendant's statements at trial. The duration of a conspiracy extends

> "* * * 'beyond the commission of the principal crime to include concomitant and closely connected disposition of its fruits or concealment of its traces * * *.'" *State v. Davis, supra,* 19 Or App at 450, citing McCormick, Evidence (2nd ed) 646.

Defendant contends that the prejudice inherent in the evidence outweighed its probative value. The evidence was relevant, because it tended to show that a conspiracy to commit perjury at the trial existed. The trial court did not abuse its discretion in concluding that the evidence was not excessively prejudicial.

Affirmed.

---

[4] ORS 161.465(1) provides:

"For the purpose of application of ORS 131.125 [which relates to the statute of limitations]:

"(1) Conspiracy is a continuing course of conduct which terminates when the crime or crimes which are its object are completed or the agreement that they be committed is abandoned by the defendant and by those with whom he conspired."