Argued and submitted September 4, reversed and remanded December 30, 1987, reconsideration denied April 22, petition for review denied May 24, 1988 (305 Or 672)

## STATE OF OREGON,
*Appellant,*

*v.*

## SANDRA KAYE JONES,
*Respondent.*

## (C86-03-31156; CA A41179)

747 P2d 1013

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause for appellant. With her on the briefs were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Michele A. Longo, Lincoln City, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

The state appeals an order dismissing an indictment. We reverse.

The indictment charges defendant with murder, assault in the second degree, menacing and attempted murder. Detective Peck was one of the primary investigators in the murder investigation. He and another officer made measurements of the crime scene and searched the victim's truck. Peck also interviewed defendant, swabbed her hands for a gun shot residue test, interviewed the victim of the alleged menacing and made a video tape of the crime scene.

In February, 1986, Peck was accused of stealing drugs from the Lincoln County Sheriff's office evidence locker. The theft was unrelated to his investigation of the charges against defendant. On the eve of defendant's trial, the state turned over to defendant 600 pages of reports regarding Peck's alleged wrongdoings. At a pretrial hearing on a motion to dismiss the indictment, defendant called Peck to the stand. Peck invoked his privilege not to testify.[1] The state indicated that it would not call Peck as a witness. The state refused to grant Peck immunity from prosecution for the alleged thefts in exchange for his testimony. *See* ORS 136.617 and ORS 136.619. He was later indicted on 46 counts related to the missing drugs. Defendant asserted that she wanted to call him as a witness and claims that she would have presented exculpatory evidence through his testimony.

The state offered to accommodate defendant by agreeing that it would not object on hearsay grounds to defendant's introduction at trial of what Peck did in connection with the case or to Peck's testimony at a juvenile court hearing concerning defendant's son. The trial court nevertheless granted defendant's motion to dismiss on the ground that Peck's unavailability as a witness violated her constitutional rights to confrontation, compulsory process and due process

---

[1] The trial court made no inquiry as to whether the matters about which Peck would be asked to testify in defendant's trial presented a reasonable basis for believing that the answers might incriminate him. *See United States v. Thornton*, 733 F2d 121 (DC Cir 1984). It apparently accepted Peck's assertion of the privilege at face value. The state does not claim that the trial court erred in sustaining the right without obtaining an explanation of the basis for its assertion.

under both the state and federal constitution. The court found:

"1. Lincoln County Sheriff's Deputy Ron Peck was involved in the taking of statements from Sandra K. Jones; in administering the gunshot residue test of Sandra K. Jones; in making measurements of the location of various items of evidence at the scene of the shooting; in making observations of gunshell casings; was in control and possession of most of the physical evidence and had an over-all involvement prior to February 5, 1986, in the investigation and preparation of the prosecution of Sandra K. Jones.

"2. The State of Oregon has indicted Ron Peck and the evidence before this Court supports the possibility that the defendant could establish at trial that Ron Peck is a person who has stolen and destroyed evidence. It is a likely plausibility that at trial defendant could establish that Judge Littlehales has found that Ron Peck filed false sworn statements before his court.

"3. Ron Peck was an agent of the State. Prior to February 5, 1986, Ron Peck assisted the prosecution in preparation of its case against Sandra K. Jones. Ron Peck's decision to exercise his Fifth Amendment rights was a direct result of the State's indictment of him or threat of indictment. Ron Peck's unavailability as a witness is due to the State's failure to grant immunity from prosecution, after the defendant requested that the State grant Ron Peck immunity from prosecution. His status as a witness is within the control of the State.

"* * * * *

"WHEREUPON, the Court makes the following CONCLUSIONS OF LAW:

"1. Ron Peck, formerly a criminal investigator with Lincoln County Sheriff's office, is an essential witness for the accused.

"2. The effect of Ron Peck as a witness on the stand would be a mammoth asset to the defense of this case.

"3. The United States and Oregon Constitutions afford every accused fundamental fairness. Each accused has the right to confront witnesses and the right to subpoena witnesses who will testify in his favor. Under the facts of this case, a trial would result in a denial of these fundamental rights to defendant Sandra K. Jones."

Although we are bound by those findings, all of which are supported by evidence in the record, we must draw our own

conclusions of law. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

The state contends that the court erred in dismissing the indictment. It argues, first, that Peck's unavailability would not have violated defendant's right to confrontation. We address the issue first under the state constitution. *State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983). Article I, section 11, provides that "the accused shall have the right * * * to meet the witnesses face to face." Defendant argues that the framers of the Oregon Constitution intended that the protection afforded under Article I, section 11, be greater than the protection afforded under the federal counterpart. She cites *State ex rel. Gladden v. Lonergan,* 201 Or 163, 175, 269 P2d 491 (1954):

> "The constitutional right 'to meet the witnesses face to face' is not limited to witnesses *against* the accused. The provision is broad enough to include all witnesses * * *. Under this provision it is clear that a right to direct examination of one's own witnesses is guaranteed, as well as the right of cross-examination of adverse witnesses, both rights being subject to the well-established exceptions to the hearsay rule." (Emphasis in original.)

*Lonergran* determined that the warden of the state penitentiary could be required physically to produce a prisoner at a criminal trial to testify on behalf of the defendant. The court held that the state could not refuse to produce a witness over whom it had control. The case did not deal with the issue before us. The state has not interfered with the appearance of a witness who then refused to testify. In this case Peck was unavailable as a witness by his own assertion of his privilege against self-incrimination. The privilege belongs to the witness alone and is beyond the control of either defendant or the state. *State v. Inman,* 8 Or App 180, 183, 492 P2d 804, *rev den* (1972).

The trial court found that "Peck's unavailability as a witness is due to the state's failure to grant immunity from prosecution, after the defendant requested that the state grant Ron Peck immunity from prosecution." Although it is probable that, but for the state's refusal to grant immunity, Peck would have testified, the issue is not whether the state had some causal effect on Peck's assertion of the privilege, but

whether the state acted with the purpose of depriving defendant of the benefit of Peck's testimony. In the absence of any evidence that the state sought to influence the witness to assert the privilege, there is no state violation of defendant's privilege under the state Confrontation Clause.

■ The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with witnesses *against* him." (Emphasis supplied.) The right applies only to evidence actually disclosed at trial. A defendant has no right to confront a "witness" who provides no evidence at trial. *United States ex rel. Meadows v. State of New York,* 426 F2d 1176, 1184 (2d Cir 1970), *cert den* 401 US 941 (1971). Peck was not to be called as a state witness. We conclude that his unavailability at trial would not violate defendant's confrontation rights under either the state or federal constitution.

The next issue is whether Peck's unavailability violated defendant's right to compulsory process. Article I, section 11, also provides that a defendant has the right "to have compulsory process for obtaining witnesses in his favor * * *." The Compulsory Process Clause of the Sixth Amendment of the federal constitution is virtually identical. There are no Oregon decisions on point, but the cases under the Sixth Amendment are helpful in construing this portion of Article I, section 11. *See State v. Mai,* 294 Or 269, 656 P2d 315 (1982); *State v. Huffman,* 65 Or App 594, 672 P2d 1351 (1983).

Federal courts have consistently held that a defendant's compulsory process rights are not violated when a witness invokes the right not to testify. *United States v. Davis,* 623 F2d 188 (1st Cir 1980), *cert den* 449 US 1077 (1981); *United States v. Herman,* 589 F2d 1191 (3d Cir 1978), *cert den* 441 US 913 (1979); *United States v. Trejo-Zambrano,* 582 F2d 460 (9th Cir 1978); *United States v. Gay,* 567 F2d 916 (9th Cir), *cert den* 435 US 999 (1978); *United States v. Smith,* 542 F2d 711 (7th Cir 1976); *United States v. Alessio,* 528 F2d 1079 (9th Cir), *cert den* 426 US 948 (1976). The only exceptions are when the defendant can show that the state influenced the witness to invoke the right or when the state has granted immunity to some witnesses but not to others in order to influence the factfinding process improperly. For example, in *Webb v. Texas,* 409 US 95, 93 S Ct 351, 34 L Ed 2d 330 (1972),

before the only witness for the defense was permitted to testify, the trial judge severely admonished her regarding the penalty for perjury. As a result, the witness refused to testify. The Supreme Court held that "the judge's threatening remarks, directed alone at the single witness for the defense, effectively drove the witness off the stand, and thus deprived the petitioner of due process of law." *Webb v. Texas, supra,* 409 US at 98.

■　　In *United States v. Morrison,* 535 F2d 223 (3d Cir 1976), the court held that the government attorney's threats and intimidation of a defense witness who had indicated an intention not to assert her right against self-incrimination before the government's activity violated the defendant's compulsory process rights. A defendant must be prepared to show that the government's decisions were made with the deliberate intention of distorting the judicial factfinding process. *See United States v. Herman, supra,* 589 F2d at 1203. Although the state's decision not to grant Peck immunity in an unrelated case may have influenced him to refuse to testify, there is no evidence that the state's decision was intended to affect the outcome of the case against defendant. The state was not required to submit to Peck's demand that it waive the right to prosecute him in order to prosecute defendant. We conclude that defendant's state and federal rights to compulsory process were not violated.

■　　The remaining issue is whether Peck's unavailability violated defendant's right to due process under the Fourteenth Amendment. In viewing all of the testimony which defendant sought to introduce through Peck, we find nothing definitely favorable to defendant. Even assuming that there is such evidence, the record before us fails to establish that there were no other means of obtaining it. Given that, as well as the state's agreement not to object on hearsay grounds to defendant's introduction of anything Peck did in the case, we hold that his unavailability at trial does not violate defendant's federal due process rights.

Reversed and remanded for trial.