Richard BASSIK, Petitioner,

v.

Charles SCULLY, Superintendent, Green Haven Correctional Facility, Stormville, New York, Respondent.

No. CV 83–5107.

United States District Court, E.D. New York.

May 29, 1984.

---

7. *See supra* note 6.

Norman E. Frowley, New York City, for petitioner.

Denis Dillon, Nassau Dist. Atty. by Anthony Girese, Asst. Dist. Atty., Mineola, N.Y., for respondent.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action for a writ of habeas corpus brought under 28 U.S.C. Section 2254.

## I. FACTS

In June 1977, following a jury trial, petitioner was convicted by the Nassau County Court of kidnapping in the first degree (N.Y.Penal Law Section 135.35).

It is undisputed that petitioner committed the kidnapping; petitioner's defense was insanity.

Petitioner kidnapped a six-year old child, took him to a motel, gave him a sleeping pill, and left the motel. The child awoke and phoned for help. The police rescued the child and waited in the motel room for petitioner to return. Petitioner returned and was arrested. The police, without giving a *Miranda* warning, asked petitioner the location of his car, for the purpose of determining whether there were any accomplices in the vicinity. Petitioner told the police petitioner's car was in the motel parking lot. Later, petitioner was taken to police headquarters and given a *Miranda* warning. Petitioner then confessed. Petitioner contends that, prior to confessing petitioner unsuccessfully sought permission to telephone his brother, an attorney. In any case, after confessing, petitioner telephoned his brother to come to the police station. Petitioner then had a conversation with his brother in the police squad room, which was overheard by detectives. Petitioner in this conversation again admitted to the kidnapping.

A pre-trial suppression hearing was held. The Nassau County Court ruled that the initial police question regarding the location of petitioner's automobile was proper and that petitioner's answer was not incriminatory and did not lead to the recovery of any incriminating evidence which would not otherwise have been recovered. The Court also ruled that petitioner's confession to the police was admissible because petitioner had knowingly and intelligently waived his right to remain silent and his right to counsel. The Court also ruled that petitioner's conversation with his brother was admissible because petitioner had no reasonable expectation of privacy at the time of the conversation, in that petitioner knew that detectives were present in the room and had not requested privacy, and in that the conversation was not overheard surreptitiously.

During the trial, conflicting psychiatric testimony regarding petitioner's sanity was presented.

At the trial, the judge refused to instruct the jury that a verdict of "not guilty"

would result in petitioner being sent to a mental institution. Further, the judge instructed the jury (without objection) that "since sanity is the issue and normal condition of a man and woman, the law presumes as a fact that every individual is sane in the absence of proof to the contrary. But when evidence is introduced which tends to rebut the presumption of sanity, as in this case, the People are required to prove beyond a reasonable doubt that a defendant was criminally responsible for his acts and conduct at the time when he allegedly committed them." Further, the judge instructed the jury that the jury should consider post-arrest statements made by petitioner only if the state proved beyond a reasonable doubt that petitioner understood the statements and knowingly waived his *Miranda* rights.

On appeal to the Appellate Division, petitioner argued for the first time that the charge on the presumption of sanity was erroneous. Petitioner also argued for the first time that all petitioner's post-arrest statements were inadmissible on the ground that petitioner was mentally imbalanced at the time he made them. The state argued in its brief that these claims were barred by procedural default. The Appellate Division affirmed the conviction without opinion, but reduced petitioner's sentence. *People v. Bassik*, 73 A.D.2d 651, 422 N.Y.S.2d 1017 (1979).

On appeal to the New York Court of Appeals, petitioner noted that an amendment to a New York statute, N.Y.C.P.L. Section 300.10, requiring that a jury be informed that a verdict of "not guilty" would result in a defendant pleading insanity being sent to a mental institution, had become effective September 1, 1980. The New York Court of Appeals issued an opinion stating that the amendment to the statute had no bearing on petitioner's trial, which had concluded prior to the effective date of the amendment, that the trial judge properly refused to inform the jury that a "not guilty" verdict would result in petitioner being sent to a mental institution, and that "[w]e have considered the defendant's remaining contentions and find them

to be without merit." *People v. Bassik*, 53 N.Y.2d 1032, 425 N.E.2d 873, 442 N.Y.S.2d 485 (1981).

## II. DISCUSSION

### A. PROOF OF SANITY

Petitioner's first contention is that the prosecution did not prove petitioner's sanity beyond a reasonable doubt.

■ At trial, expert psychiatric witnesses presented conflicting views upon whether petitioner could appreciate the nature and consequences of his acts and that his acts were wrong. Upon examining all papers submitted to the Court, we conclude that there was ample evidence presented at trial from which a reasonable trier of fact could conclude beyond a reasonable doubt that petitioner was sane.

### B. FAILURE TO CHARGE JURY THAT VERDICT OF "NOT GUILTY" WOULD LEAD TO INSTITUTIONALIZATION

Petitioner contends that the trial judge should have informed the jury of the fact that a verdict of "not guilty" would result in petitioner being placed in a mental institution. Petitioner's contention apparently rests upon two grounds. First, petitioner apparently contends that the right to due process imposes a general requirement that a jury be informed that a criminal defendant pleading insanity as a defense will be sent to a mental institution if found "not guilty". Second, petitioner contends that an amendment to a New York statute, N.Y. C.P.L. Section 300.10, enacted during the period when petitioner's appeals were pending, which requires that such a charge be given, should have been applied retroactively.

■ Petitioner's contention concerning the alleged retroactive effect of the New York statute is clearly not a federal issue. The New York Court of Appeals has determined that the statute is not retroactive in the sense of requiring an appellate court to order a retrial of cases tried prior to the

enactment of the statute; it is not for us to dispute the New York Court of Appeals' interpretation of a state statute. Although it is true that federal courts generally require that developments in federal case law interpreting the federal Constitution be given retroactive effect, it does not follow that federal law requires that changes in state statutory law be given retroactive effect. There is in general no reason why an amendment to a statute (as distinct from a new court interpretation of a pre-existing statutory or constitutional provision) must necessarily be given retroactive effect; in any event it is for the state courts to determine the meaning of state statutes and amendments. Since petitioner's contention in this regard does not present a colorable federal claim, there is no necessity for us to determine whether petitioner has exhausted his state remedies with respect to this claim.

■ We further find that petitioner's contention that the right to due process imposes a general requirement that the charge in question be given likewise does not constitute a colorable federal claim. Petitioner's reasoning appears to be that if the jury is not informed that a criminal defendant pleading insanity will be sent to a mental institution if acquitted, the jury will wrongly believe that the defendant will be free to walk the streets if acquitted, and will therefore ignore the evidence and law bearing on the question of sanity and find the defendant "guilty" in order to prevent his return to the streets. While it is certainly *possible* that a jury might behave in this manner, we cannot say that the probability of such behavior is so high or that factors counselling against the use of the charge are so weak that there exists even a colorable claim that the right to due process requires that the charge be given. A federal court considering the validity of state court practices should not blithely assume that there is a high probability that state juries will disregard their oaths and their duty to render a verdict on the basis of the evidence and the law. While federal court practices may require that federal juries be given certain charges, it does not

follow that the Constitution requires that such charges be given by state courts to state juries. While there are plausible policy arguments in favor of the use of the charge in question, there are also arguments against such a charge. If a jury is informed that the defendant will be sent to a mental institution if acquitted, the jury may be less reluctant than it would otherwise be to allow itself to be swayed by sympathy for the defendant. In view of the weighty factors militating both in favor of and against the use of the charge, we believe that it is clear that the Constitution leaves the states free to decide for themselves whether or not to employ such a charge.

## C. PRESUMPTION OF SANITY

Petitioner contends that the trial judge erred in giving the following charge:

> It is fundamental under our law that criminal liability can only be placed upon human beings who are in such a mental condition as to be responsible for their acts. However, since sanity is the issue and normal condition of a man and woman, the law presumes as a fact that every individual is sane in the absence of proof to the contrary. But when evidence is introduced which tends to rebut the presumption of sanity, as in this case, the People are required to prove beyond a reasonable doubt that the defendant was criminally responsible for his acts and conduct at the time when he allegedly committed them.

Petitioner objects to the reference to the presumption of sanity.

We find two independent reasons why this contention does not justify issuance of the writ.

■ First, we find that petitioner has waived the right to assert this contention. Petitioner did not object at trial to this part of the judge's charge. In a brief submitted to the Appellate Division of the New York Supreme Court, the state argued that petitioner had waived the right to challenge this part of the judge's charge by not ob-

jecting at trial. The Appellate Division, after modifying petitioner's sentence, affirmed petitioner's conviction without opinion, thereby implicitly finding a waiver. *See Martinez v. Harris*, 675 F.2d 51 (2d Cir.1982). Similarly, the state argued in a brief submitted to the New York Court of Appeals that petitioner had so waived. The Court of Appeals' only comment on petitioner's contention was "[w]e have considered the [petitioner's] remaining contentions and find them to be without merit." *People v. Bassik*, 53 N.Y.2d 1032, 1033, 425 N.E.2d 873, 874, 442 N.Y.S.2d 485, 486 (1981). Petitioner argues that the Court of Appeals thereby considered petitioner's contention on the merits, thus rendering any previous waiver of the contention irrelevant. However, we do not believe that the Court of Appeals considered petitioner's contention on the merits. Petitioner's general contention before the state appellate courts that the judge's charge justifies a retrial involves two sub-contentions: (1) the substantive sub-contention that the charge was erroneous; (2) the procedural sub-contention that petitioner's failure to object to the charge at trial should not preclude him from challenging the charge on appeal. We believe that the Court of Appeals, in stating that the court had considered the general contention and found it without merit, meant that the Court was cognizant of petitioner's general contention but that the Court found the procedural sub-contention without merit and therefore found it unnecessary to consider the substantive sub-contention. Since the validity of the general contention requires the validity of *both* sub-contentions, the finding that the procedural sub-contention was without merit would render the general contention itself meritless, irrespective of whether or not the substantive sub-contention has merit.

 We believe that if a federal habeas petitioner failed to raise an issue at trial, and the state in its appellate briefs contended that petitioner was barred from raising the issue on appeal because of procedural default, the federal habeas court should not regard the state appellate court

as having ignored the procedural default unless the state appellate court clearly manifested an intent to ignore the procedural default. At any rate, this rule should apply to a petitioner convicted by a New York State court. In New York, the general rule is that a claim not raised at trial may not be asserted on appeal pursuant to N.Y.C.P.L. Section 470.05; an exception is made only for certain fundamental constitutional rights. *People v. Jones*, 81 A.D.2d 22, 440 N.Y.S.2d 248 (1981). Consequently, we should not lightly assume that a New York appellate court ignored a procedural default. When a New York appellate court ignores a procedural default and considers a claim not raised at trial on the merits, the court will in all probability do so in clear and explicit terms, both because of the unusualness of the step of ignoring procedural default, and because of the fact that the underlying issue must be a very serious one in order to justify the court's action in ignoring the procedural default. In the instant case, the New York Court of Appeals' statement that the Court considered petitioner's contention and found it without merit does not constitute the sort of clear and explicit decision to ignore a procedural default necessary to justify a federal habeas court in assuming that a procedural default was ignored. Our reasoning on this point is borne out by *Rollins v. Maggio*, 711 F.2d 592 (5th Cir.1983). There, a Louisiana state court had rejected petitioner's collateral attack on his conviction, stating "[t]here is no merit in petitioner's claims that erroneous jury charges were given on the day of trial." The Fifth Circuit, noting that petitioner had not objected to the jury charges at trial, concluded that the Louisiana state court decision was based upon petitioner's procedural default and not upon a rejection of the substance of petitioner's claim regarding jury charges.

Since we have found that petitioner has waived the right to assert that the judge's charge was erroneous, petitioner has exhausted his state court remedies regarding this assertion. *Engle v. Isaac*, 456 U.S.

107, 125, n. 28, 102 S.Ct. 1558, 1570 n. 28, 71 L.Ed.2d 783 (1982).

There is a second reason why petitioner's contention that the portion of the judge's charge in question was erroneous does not justify issuance of the writ. We find that petitioner's contention does not constitute a colorable federal claim.

■ The judge's charge expressly states that the presumption of sanity did *not* apply, because the defense had introduced evidence of insanity. While the charge may have been unnecessary, it is inconceivable to this court how a colorable claim can be made out that the charge deprived petitioner of a constitutional right. Indeed, insofar as the charge may be conceived as having any effect upon the jury at all, it appears that the charge would work to a defendant's *benefit* by pointing out to the jury that the defense had succeeded in overcoming the presumption of sanity and that the presumption of sanity was therefore inapplicable.

In *United States v. Arroyave*, 465 F.2d 962 (9th Cir.1972), the court rejected a judge's instruction that the presumption of sanity would not be overcome until the defense had demonstrated a reasonable doubt as to the defendant's sanity. That case is not on point. In that case, the trial judge left it to the jury to determine whether the defense had introduced sufficient evidence to justify the removal of the presumption. In the instant case, by contrast, the trial judge expressly told the jury that the defense had introduced evidence of insanity and that the presumption therefore did not apply. The question of whether a state judge may constitutionally leave to the jury the question of whether the presumption of sanity is applicable in a given case is one which we need not here address.

## D. SUPPRESSION OF EVIDENCE AND VOLUNTARINESS OF CONFESSION

Petitioner contends that certain post-arrest statements of petitioner were improperly admitted into evidence at trial.

■ Petitioner contends that all such statements are inadmissible because petitioner was in a mentally unbalanced state at the time. Petitioner did not raise this contention at the suppression hearing held before trial and did not move during trial to reopen the suppression hearing. The state argued in its appellate briefs that petitioner had waived the right to raise this contention. Here again, the New York Court of Appeals' only comment was "[w]e have considered the [petitioner's] remaining contentions and find them to be without merit." As we have explained earlier in our discussion of petitioner's contention that the judge should have charged the jury on the consequences of a "not guilty" verdict, the Court of Appeals' language here does not indicate that the Court of Appeals ignored petitioner's procedural default. Consequently, petitioner's procedural default bars us from hearing petitioner's contention.

■ The above reasoning shows that petitioner has waived the right to contend that his post-arrest statements were inadmissible on the ground that petitioner was mentally unbalanced when he made them. Of course, once the statements were admitted into evidence it was up to the jury to determine whether the state had proved beyond a reasonable doubt that petitioner understood the statements and had knowingly waived his *Miranda* rights. *See* Reply Memorandum of Law on Behalf of the Petitioner, Point III. Petitioner has waived the right to challenge the *admissibility* of the statements on the ground of mental imbalance, but has not waived the right to challenge the jury verdict as being unsupported by sufficient evidence. As we have already noted, however, there was ample evidence from which the jury could have found beyond a reasonable doubt that petitioner was sane. Further, upon examining all papers submitted to the Court, we find that there was ample evidence from which the jury could have found beyond a reasonable doubt that petitioner's mental condition at the time of the post-arrest state-

ments was such that petitioner understood the statements and knowingly waived his *Miranda* right.

 Petitioner further contends that petitioner's post-arrest statement to the police regarding the location of petitioner's car, elicited by the police without a *Miranda* warning, is inadmissible. We agree with the state court's conclusion following a suppression hearing that petitioner's statement was not incriminating, that the police were not seeking incriminating evidence but merely attempting to ascertain whether there was an accomplice in the vicinity, and that the statement did not lead to the recovery of any incriminating evidence which would not otherwise have been recovered.

 Petitioner further contends that petitioner's confession following the reading of his *Miranda* rights is inadmissible because the police ignored petitioner's requests that he be allowed to telephone his brother. However, the state court implicitly rejected petitioner's factual allegations in this respect following a suppression hearing, and we will not re-examine them.

 Petitioner contends that statements made by petitioner to petitioner's brother following petitioner's confession and overheard by detectives are inadmissible on the ground of petitioner's right to privacy. However, the state court found following a suppression hearing that petitioner had no reasonable expectation of privacy under the circumstances of the conversation. Insofar as the state court ruling is based on findings of fact, we are bound by it; insofar as the state court ruling is based on conclusions of law, we agree with it.

### III. CONCLUSION

For the above reasons, the petition for a writ of habeas corpus is denied, and the Clerk shall enter judgment in favor of the respondents and against the petitioner.

SO ORDERED.