Argued and submitted March 13, 1997; resubmitted En Banc February 11, reversed and remanded for new trial June 24, petition for review allowed October 20, 1998 (327 Or 620)

## STATE OF OREGON,
*Respondent,*

*v.*

## DARIUSH DAVID AMINI,
*Appellant.*

(94-01-30513; CA A88710)

963 P2d 65

Sally L. Avera, Public Defender, argued the cause and filed the brief for appellant.

Ann F. Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

DE MUNIZ, J.

Warren, J., dissenting.

## DE MUNIZ, J.

Defendant appeals his convictions of two counts of aggravated murder, and one count each of second-degree assault and attempted aggravated murder. We reverse and remand.

Defendant was charged with the fatal shooting of his wife and a guest and the injury of a second guest at his condominium. He interposed the affirmative defense of guilty except for insanity, pursuant to ORS 161.295. ORS 161.313 provides:

> "When the issue of insanity under ORS 161.295 is submitted to be determined by a jury in the trial court, the court shall instruct the jury in accordance with ORS 161.327."

ORS 161.327 defines the process that must be followed after a finding of guilty except for insanity. At the conclusion of the guilt phase of defendant's trial, the court gave the following jury instruction, which essentially tracks the requirements of ORS 161.327:

> "If the defendant is found guilty except for insanity, the defendant is subject to the following dispositions: One, by the Court: A, if the Court determines that the defendant is presently affected by mental disease or defect and presents a substantial danger to others requiring commitment to a state mental hospital, the Court will order the defendant committed to a state mental hospital pending further disposition by the Psychiatric Security Review Board: B, if the Court finds that the defendant is affected by a mental disease or defect but either that it is in remission or the defendant is not presently in substantial—a substantial danger to others requiring commitment to a state mental hospital, the Court will order the defendant placed under the jurisdiction of the Psychiatric Security Review Board and may order that the defendant be conditionally released.

> "A defendant who is conditionally released is subject to such supervisory orders of the Court as are in the best interest of justice, the protection of society and welfare of the defendant.

"Two, by the Psychiatric Security Review Board: The Psychiatric Security Review Board is a state agency that by statute has [as] its primary concern the protection of society.

"After the Court places the defendant in the jurisdiction of the Psychiatric Security Review Board, the board will have jurisdiction over the defendant for a length of time equal to the maximum period of incarceration to which the defendant could have been sentenced had the defendant been found guilty of the charged crime.

"A, if the board determines that the defendant continues to be affected by a mental disease or defect and presents a substantial danger to others and is not a proper subject for conditional release, the board will order the defendant committed to a state mental hospital for custody, care and treatment.

"B, the Psychiatric Security Review Board will order the defendant be discharged from its jurisdiction at its first hearing or some later date [if] the board determines that either: The defendant is no longer affected by mental disease or defect; or two, the defendant is still affected by mental disease or defect but no longer presents a substantial danger to others.

"C, if the board, either at its first hearing or some later date, determines the defendant is still affected by a mental disease or defect and is a substantial danger to others but can be controlled adequately if conditionally released with treatment as a condition of release, the board will order the defendant to be conditionally released.

"A defendant who is conditionally released is subject to such supervisory powers of the board as are in the best interests of justice, the protection of society and the welfare of the person.

"A person is considered to have a mental disease or defect requiring supervision even when that disease or defect is in a state of remission when the disease may, with reasonable medical probability, occasionally become active and render the person a danger to others."[1]

---

[1] The court also instructed the jury that it was not to "consider what sentence might be imposed by the Court if this defendant is found guilty." However, it later clarified that instruction to apprise the jury that the jury would determine the sentence if it convicted defendant of aggravated murder.

Defendant excepted to the instruction on the ground, *inter alia*:

> "The statute requires an instruction to that effect. And we object and take the exception because the statute unconstitutionally directs and suggests to the jury that [it] should and could consider the disposition of the charge in its deliberation. * * * And further, that the jury could be confused and feel that [it is] to consider and deliberate on the disposition of a person found guilty except for insanity[.]"

The jury rejected the defense and convicted defendant on each of the charges. Subsequently, in the penalty phase, the jury fixed the penalty on the aggravated murder counts as life imprisonment without the possibility of parole.

On appeal, defendant's only assignment of error is directed against the giving of the "instruction advising [the jury] of the consequences of a guilty except for insanity finding." Defendant contends that, although the disposition of a criminal defendant who is found to be insane is not a matter for the jury's consideration, the instruction could have induced the jury to consider the possibility that an insanity finding instead of a conviction would lead to defendant's release. Defendant argues that the giving of the instruction thereby violated his due process rights under the Fourteenth Amendment and his right to an impartial jury under the Sixth Amendment to the United States Constitution and Article I, section 11, of the Oregon Constitution.

■ The state responds, initially, that defendant's exception in the trial court was inadequate to preserve the issue he asserts on appeal. It is correct, as the state argues, that defendant's exception did not refer to a particular constitutional provision that the instruction offended. However, the exception clearly alerted the trial court and the state to defendant's rationale—that the instruction directed the jury's attention to matters that it could not permissibly consider in arriving at its finding on the merits of the insanity defense. That rationale, conjoined with defendant's references to the unconstitutionality of the statute, was sufficient to preserve the constitutional arguments that defendant advances now. *See State v. Hitz*, 307 Or 183, 766 P2d 373 (1988). We turn to the merits.

Article I, section 11, of the Oregon Constitution, provides, in material part, that "[i]n all criminal prosecutions, the accused shall have the right to public trial by an impartial jury." In *State ex rel Ricco v. Biggs*, 198 Or 413, 428, 255 P2d 1055 (1953), the court observed:

> "The right to a public trial 'by an impartial jury' has been interpreted by all courts as meaning a right to 'a *fair and impartial trial.*' " (Emphasis supplied.)

In *State v. Minnieweather*, 99 Or App 166, 171, 781 P2d 401 (1989), after citing Article I, section 11, and reiterating the foregoing statement from *Ricco*, we stated:

> "Fairness is ultimately a question 'for our own judicial sense of fairness, guided by our knowledge of the traditions which have shaped procedural rights and by our understanding of the mechanics of trial procedures, including the functioning in our present day practice.' " (Quoting *Brooks v. Gladden*, 226 Or 191, 204, 358 P2d 1055, *cert den* 366 US 947 (1961).)

■ We are required to decide state constitutional issues before reaching questions arising under the federal constitution. *State v. Kennedy*, 295 Or 260, 660 P2d 1316 (1983). In the present case, however, it is not clear whether and how the analysis under Article I, section 11, and under the Due Process Clause of the Fourteenth Amendment might differ. In *State v. Tucker*, 315 Or 321, 336, 845 P2d 904 (1993), the Oregon Supreme Court said:

> "The test for whether a particular criminal procedure violates the Due Process Clause of the Fourteenth Amendment is whether the procedure is *fundamentally fair*, or whether a different procedure is necessary to prevent miscarriages of justice." (Citation omitted; emphasis supplied.)

*See also Dowling v. United States*, 493 US 342, 353, 97 S Ct 2044, 110 S Ct 668, 107 L Ed 2d 708 (1990) (procedure fundamentally unfair if it violates fundamental conceptions of justice and "community sense of fair play and decency").

In addition to the fact that Article I, section 11, and the Due Process Clause embody a similar "fairness" standard, we have previously used due process as the basis for sustaining a criminal defendant's argument that requiring

him to wear shackles in the jury's presence, "without a showing of substantial necessity," violated his right to a fair trial. *State v. Kessler*, 57 Or App 469, 475, 645 P2d 1070 (1982). The defendant's contention in *Kessler* was analogous to that of defendant's here insofar as it posited that the court's action could have led the jury to a finding of guilt based on an impermissible consideration or inference. *Id.* at 472. However, our decision in *Kessler* predated the Supreme Court's decision in *Kennedy*, where the order of analysis of state and federal issues was firmly mandated. Accordingly, the initial focus of our inquiry will be on Article I, section 11. However, insofar as case authority that applies the largely similar analysis under the Due Process Clause is apposite, we also will consider it in addressing the state constitutional issue.[2]

■ As far as the parties inform us or we find, no decision by any court has specifically addressed the question presented here, *i.e.*, whether the giving of a "consequences instruction" over a defendant's objection is a violation of the defendant's constitutional rights. However, there has been a substantial amount of case law relating to other issues associated with instructing juries about the consequences of an insanity finding and about other matters relating to the sentencing or disposition of criminal defendants. In both the general and the specific contexts, the basic rule in Oregon and in most, if not all, other jurisdictions has been that the sentence that a defendant will receive if convicted, and the disposition

_____

[2] No separate discussion or analysis under the Sixth Amendment is necessary to our decision.

The dissent is not correct in its understanding that this opinion "essentially inserts a due process clause into Oregon's Constitution via Article I, section 11[.]" 154 Or App at 603 n 1. Our analysis and application of Article I, section 11, here, like the Supreme Court's in *State ex rel Ricco v. Biggs*, 198 Or 413, 428, 255 P2d 1055 (1953), pertains only to the right to a fair and impartial jury trial, and does not extend to the many other rights that the Due Process Clause protects or affects. For purposes of those different areas where the respective provisions operate, the Oregon Supreme Court has interpreted Article I, section 11, as embodying a substantive standard that is similar to the one that the United States Supreme Court has ascribed to the Due Process Clause. That fact does not mean that either of those courts has "inserted" one provision into the other, much less that we have done so by following what the two Supreme Courts have said. There is no rule of jurisprudence that different constitutional provisions—especially ones with related purposes—must be interpreted or applied in disparate ways in order to retain their separate identities.

that will be made of a defendant who is found to have a mental disorder, are not matters for the jury's consideration, and juries should not be instructed regarding them.[3]

In *State v. Daley*, 54 Or 514, 103 P 502, 104 P 1 (1909), the defendant in a murder case raised an insanity defense and requested an instruction that, if the jury found in accordance with the defense, the court would "order him to be committed to [a] lunatic asylum" if he constituted a public danger. The trial court refused to give the instruction, the defendant was convicted and, on appeal, he assigned error to the court's refusal to give the instruction. The Supreme Court rejected the assignment, explaining:

> "If the jury concluded that in consequence of the defendant's mental incapacity he was not responsible for the killing, they should have returned a verdict of not guilty by reason of insanity. Whether or not the defendant should be confined in a lunatic asylum was not a matter for the jury to consider. The determination of that question devolved exclusively upon the court: Section 1424, B. & C. Comp.

> "Where the jury are not authorized by statute to prescribe the punishment to be inflicted for the commission of a crime, no error is committed in refusing to instruct them what the penalty might be if the defendant is found guilty as charged[.]" *Id*. at 522-23.

The same principles have generally been followed in the federal system. In *Shannon v. United States*, 512 US 573, 114 S Ct 2419, 129 L Ed 2d 459 (1994), the criminal defendant sought an instruction that, if he was found not guilty by reason of insanity (NGI), he would be involuntarily committed. He argued that the instruction was required as a matter of "general federal criminal practice," or, alternatively, pursuant to the Insanity Defense Reform Act of 1984, 18 USC sections 17, 4241-4247 (IDRA). The United States Supreme Court rejected the argument, stating that the "principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system

---

[3] These principles, of course, do not apply or apply in modified ways when the jury sets the penalty as well as making the guilt determination. In this state, for example, the jury is responsible for determining the penalty in aggravated murder cases. *See State v. Montez*, 324 Or 343, 357-59, 927 P2d 64 (1996).

between judge and jury," and that "the inevitable result" of an instruction of the kind sought by the defendant "would be to draw the jury's attention toward the very thing—the possible consequences of its verdict—it should ignore." *Shannon*, 512 US at 579, 586.

The case most often cited for the contrary position is *Lyles v. United States*, 254 F2d 725 (DC Cir 1957), *cert den* 356 US 961 (1958). The prevailing opinion in that case stated:

> "This point arises under the doctrine, well established and sound, that the jury has no concern with the consequences of a verdict, either in the sentence, if any, or the nature or extent of it, or in probation. But we think that doctrine does not apply in the problem before us. The issue of insanity having been fairly raised, the jury may return one of three verdicts, guilty, not guilty, or not guilty by reason of insanity. Jurors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty. It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. But a verdict of not guilty by reason of insanity has no such commonly understood meaning. As a matter of fact its meaning was not made clear in this jurisdiction until Congress enacted the statute of August 9, 1955. It means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others. We think the jury has a right to know the meaning of this possible verdict as accurately as it knows by common knowledge the meaning of the other two possible verdicts." *Id.* at 728 (footnote omitted).

However, in *Shannon*, the United States Supreme Court observed that the District of Columbia Circuit, which decided *Lyles*, was the only federal Court of Appeals "to endorse the practice of instructing the jury regarding the consequences of an insanity acquittal," 512 US at 576, and the Supreme Court signified its agreement with other circuits that had rejected "a *Lyles*-type instruction" on the ground, *inter alia*,

"that juries are not to be concerned with the consequences of their verdicts." 512 US at 584 n 9.

In addition to that rationale for the general rule, the Oregon and federal decisions have also expressed the view that apprising the jury of the consequences of successful insanity or mental disorder defenses is intrinsically prejudicial to a criminal defendant. In *State v. Wall*, 78 Or App 81, 715 P2d 96, *rev den* 301 Or 241 (1986), we cited *Daley* and a subsequent case of similar import in addressing the defendant's argument that the trial court had erred by allowing the prosecutor to cross-examine an expert witness as to whether the defendant would be confined if his mental defect defense succeeded. We agreed with the defendant that the "disposition of a person found not guilty by reason of mental disease or defect is not to be considered by the jury," and with his argument that the substance of the cross-examination and the testimony "could have influenced the jury to find [the defendant] guilty in order to avoid his early release back into society, thereby depriving him of a fair trial." *Wall*, 78 Or App at 84. We continued:

> "The inquiry in this case, suggesting that the state could not keep defendant confined if he was found not guilty by reason of mental disease or defect, was very likely to have influenced the jury. It encouraged the jury to make its determination on impermissible grounds * * *. It placed before the jury the spectre that, if it found defendant not guilty by reason of mental disease or defect, he would be back in society very soon, perhaps to kill again. It appealed to the fears of the jurors and tended to persuade them to convict rather than risk that defendant would soon be released." *Id.* at 85.[4]

Similarly, in *Shannon*, the Court noted that the defendant's reason for seeking the consequences instruction

---

[4] We also rejected the state's contention that the error was diffused by a "curative" instruction that was identical in substance to the one that was given here. *See* 154 Or App at 592 n 1. We explained:

"The jury was instructed at the end of the trial: 'You must not consider what sentence might be imposed upon the defendant.' That instruction was too little, too late. It did not tell the jury that it was not to consider the disposition of defendant if he was found not guilty by reason of mental disease or defect. It was insufficient to dissipate the prejudice." *State v. Wall*, 78 Or App 81, 85, 715 P2d 96, *rev den* 301 Or 241 (1986).

was to prevent the jurors from mistakenly believing that "a defendant who is found NGI will be immediately released into society," 512 US at 584. However, the Court explained that the instruction could well have the opposite effect and be adverse to the defendant:

"We also are not persuaded that the instruction Shannon proposes would allay the fears of the misinformed juror about whom Shannon is concerned. '[I]f the members of a jury are so fearful of a particular defendant's release that they would violate their oaths by convicting [the defendant] solely in order to ensure that he is not set free, it is questionable whether they would be reassured by anything short of an instruction strongly suggesting that the defendant, if found NGI, would very likely be civilly committed for a lengthy period.' An accurate instruction about the consequences of an NGI verdict, however, would give no such assurance. Under the IDRA, a postverdict hearing must be held within 40 days to determine whether the defendant should be released immediately into society or hospitalized. Thus, the only mandatory period of confinement for the insanity acquittee is the period between the verdict and the hearing. Instead of encouraging a juror to return an NGI verdict, as Shannon predicts, such information might have the opposite effect—that is, a juror might vote to convict in order to eliminate the possibility that a dangerous defendant could be released after 40 days or less." 512 US at 585-86 (footnote and citations omitted).

Justice Stevens dissented in *Shannon* for himself and one other member of the Court. He took the view that a *Lyles*-type consequences instruction should generally be given in cases to which the IDRA applies. He noted, however, with respect to the point in question here:

"The Court suggests that the instruction might actually prejudice the defendant. *Ante*, at 585-86. That argument lacks merit, as there is no need to give the instruction unless the defendant requests it." 512 US at 591.

Correspondingly, some state courts have held that consequences instructions may or must be given if they are requested or not objected to by the defendant. *See, e.g., People v. Thompson*, 197 Colo 232, 591 P2d 1031 (1979); *Guilford v. State*, 258 Ga 253, 368 SE 2d 116 (1988); *Erdman v. State*, 315 Ind 46, 553 A2d 133 (1989). However, no case of which we

are aware holds that such an instruction may properly be given if the defendant does object. In *People v. Goad*, 421 Mich 20, 364 NW2d 584 (1984), and *State v. Huiett*, 271 SC 205, 246 NE2d 862 (1978), the appellate courts held that it was error for the trial courts to give the consequences instructions over the defendants' objections. Indeed, even in *Lyles*, the court indicated that it would not be "reversible error" for a trial court not to give a consequences instruction if it is objected to by the defendant. 254 F2d at 728-29.

■    It appears that the 1983 legislature's objective in enacting ORS 161.313 was to prevent juries from inferring that a finding of insanity would necessarily result in the defendant's immediate or "premature" freedom. Or Laws 1983, ch 800, § 16. *See* Minutes, Senate Judiciary Committee, HB 2075, June 29, 1983, p 7. It is clear, however, than an accurately stated consequences instruction, like the one given here, is as much open to the implication that the defendant will be released from custody in the proximate future as that he will not. Indeed, the instruction expressly said that both eventualities are possible. Consequently, it is as possible in any given case that the jury will be drawn to the implication that is adverse to the defendant as to the one that favors him. It is also possible, of course, that a given jury will give little or no weight to either implication and will, instead, abide by the standard instruction that it is not to consider the sentence or disposition that the defendant might receive. However, we held in *Wall* that an instruction of that kind was inadequate to cure the prejudice that inhered in a witness's testimony about the prospects of the defendant's confinement or release. *See* 154 Or App at 598 n 4. Given that holding, the same brief standard instruction certainly cannot be viewed as sufficient to assure that the jury will not consider and give weight to the lengthy instruction required by ORS 161.313, which apprises the jury of every permutation and variation of the dispositions that can follow from an insanity finding, and which is imparted to the jury by the court itself.

Succinctly stated, a consequences instruction is a two-edged sword, and ORS 161.313 and ORS 161.327 mandate that criminal defendants submit to the risk of which

edge a particular jury might find more alluring. Further, neither edge of the sword—*i.e.*, that an insanity finding may not result in the defendant's freedom or that it may result in the defendant being freed—is a matter that the jury may properly consider at all. It *may* be that the legislature may authorize such an instruction to be given if requested by the defendant and thereby allow defendants to choose whether to avail themselves of its potential benefits and its risks. It *may* also be the case that a succinct and nonsuggestive type of consequences instruction, as contrasted with the instruction given here, could permissibly be required by statute in all cases where the insanity defense is raised. However, neither of those questions is the one before us, and we decide neither. We are concerned here with the instruction that ORS 161.313 and ORS 161.327 do require and that the trial court gave over defendant's objection.

In many instances where a criminal defendant raises the affirmative defense of guilty except for insanity, the defense is realistically or in fact the only alternative to a conviction.[5] Although the sentence or disposition of a criminal defendant is not a matter that the jury may properly consider, as the United States Supreme Court noted in *Shannon* and we noted in *Wall* and have discussed here, instructions or evidence regarding the consequences of an insanity finding carry with them the risk or propensity of inducing jurors to compare the duration of the defendant's removal from society—or the appropriateness of the "penalty"—that might follow from a finding of insanity versus a finding of guilt. The effect of such instructions or evidence, as we explained in *Wall*, can be to influence a jury to disregard the merits of the defense and to find the "defendant guilty in order to avoid his early release back into society, thereby depriving him of a fair trial." *Wall*, 78 Or App at 84.

That inherent risk of consequences instructions and evidence is exacerbated where, as here, the instruction is nine paragraphs in length and exhaustively detailed. The

---

[5] A defendant may, of course, raise the defense and still plead not guilty, as defendant did here. That does not change the fact that, by raising the defense and presenting it to the factfinder, the defendant has put many, if not all, of his eggs in that basket.

extensive attention that the matter has received from the court in instructing the jurors can suggest to them that the matter *is* one for them to consider because, seemingly, there would be no other apparent reason to apprise them about it at such length and in such detail. However, even if the jurors do not discern such a suggestion in the instruction, the potential for misuse of the instruction is nevertheless heightened by its length and detail, because it alerts the jury to a large array of uncertain contingencies and provides the jury with a multitude of speculative comparisons between the consequences of an insanity finding and the simple alternative of the defendant's imprisonment (or other punishment) that would follow from a finding of guilt.

Although our statement in *Wall* that the evidence "depriv[ed] [the defendant] of a fair trial" was not made in the context of a constitutional issue, we reach the same conclusion about the instruction here in the context of the constitutional question that is presented now. Its potential for diverting the jury from the question that was properly before it, and leading it to reject the defense on the basis of impermissible considerations unrelated to its merits, deprived defendant of a fair trial. We hold that the instruction violated Article I, section 11, of the Oregon Constitution.[6]

Reversed and remanded for new trial.

_____

[6] By way of comparison, in *Lakeside v. Oregon*, 435 US 393, 98 S Ct 1091, 55 L Ed 2d 319 (1978), the question was whether the defendant's Fifth and Sixth Amendment rights were violated by an instruction, given over his objection, that the jury was to attach no significance to the fact that he did not testify. Unlike the instruction here, only one implication could be found in the terms of that instruction. The defendant's argument that the United States Supreme Court rejected in *Lakeside* was that the instruction violated his rights because it could have the effect of calling the jurors' attention to the fact that it told them to disregard and, in turn, cause them to do the very thing that it unambiguously told them not to do. By contrast, the consequences instruction here, equally unambiguously, tells the jury at least two things, one of which is that the defendant may be a free man in the proximate future if he is found insane instead of guilty. Unlike the situation in *Lakeside*, this instruction imparts information to the jury that is unfavorable to the defendant by its own terms; and, unlike the putative problem in *Lakeside*, the harm that the consequences instruction can do inheres in what it does say rather than in the jury disregarding what it says.

**WARREN, J.,** dissenting.

The majority opinion holds that this case raises a question of state constitutional law and proceeds to decide it on that basis. However, this appeal raises no issue of jury impartiality pursuant to Article I, section 11, of the Oregon Constitution, and can only be rationally decided under the Due Process Clause of the federal constitution.[1]

Regardless of how it is initially framed, the majority opinion ultimately centers on a federal due process analysis with the majority of its precedent arising out of due process cases. As the court noted in *State v. Clark*, 291 Or 231, 235 n 4, 630 P2d 810, *cert den* 454 US 1084, 102 S Ct 640, 70 L Ed 2d 619 (1981), " 'due process' must refer to [the] federal clause and must be supported by interpretations of the clause in decisions of the United States Supreme Court or of other courts based on such decisions, since the phrase does not appear in the Oregon Constitution." 291 Or at 235 n 4. Although the majority takes an incorrect and unnecessary detour in its discussion of the Oregon Constitution, it ultimately analyzes the issue in its correct federal due process context.

---

[1] The majority opinion's attempt to decide this case pursuant to state constitutional law is, at best, illusory and essentially inserts a due process clause into Oregon's Constitution via Article I, section 11, when there is none. It relies on *State ex rel Ricco v. Biggs*, 198 Or 413, 255 P2d 1055 (1953), for the proposition that the right to a fair trial may be analyzed pursuant to Article I, section 11, which provides: "In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury." In *Ricco*, the court said that that section means a right to a "fair and impartial trial." 198 Or at 428. That case, however, was a mandamus action initiated by the defendant seeking a change of venue. In that context, the argument was made that it was impossible to have an impartial jury and a fair trial without a change of venue. Thus, when fairness is predicated on the question of impartiality, it might be appropriate to consider such a challenge based on Article I, section 11. In this case, however, there is no question of impartiality, only fairness. When the question is simply the fairness of criminal procedures, the appropriate analysis centers only on the Due Process Clause of the Fourteenth Amendment. *See, e.g., Bartz v. State of Oregon,* 314 Or 353, 367-68, 839 P2d 217 (1992). Moreover, pursuant to Article I, section 11, it is impermissible to presume harm to defendant even if there is a potential for prejudice when "nothing in the record casts doubt on the jury's impartiality." *State v. Busby,* 315 Or 292, 301, 844 P2d 897 (1993); *see also State v. Guzek,* 322 Or 245, 279, 906 P2d 272 (1995) (Graber, J., dissenting) (explaining that the "impartial jury clause * * * does not govern what type of evidence that an impartial jury, once empaneled, may hear or consider").

In that setting, the majority opinion centers on whether giving a consequences instruction over the objections of defendant is fundamentally fair. Although I will subsequently address the question of fundamental fairness, I do not believe this issue is correctly analyzed simply by deciding whether it is fundamentally fair.

The appropriate analysis: (1) identifies the right in question; (2) determines whether that right is fundamental; and, if so, (3) decides whether there is a reasonable likelihood that the jury applied the instruction in a manner that violated that fundamental right. *See Victor v. Nebraska*, 511 US 1, 114 S Ct 1239, 127 L Ed 2d 583 (1994) (applying this analysis to instruction defining reasonable doubt).

The Due Process Clause protects the rights of a criminal defendant in a state court. *Bartz v. State of Oregon*, 314 Or 353, 367, 839 P2d 217 (1992). Many procedural rights are "derived from their nature as procedures that are fundamental within the context of a criminal proceeding." *Id.*

> "Examples include the right to have the state carry the burden of proof regarding all essential elements of an offense, *Mullaney v. Wilbur*, 421 US 684, 95 S Ct 1881, 44 L Ed 2d 508 (1975), and the right to have guilt proved beyond a reasonable doubt, *In re Winship*, 397 US 358, 90 S Ct 1068, 25 L Ed 2d 368 (1970)." *Id.* at 367-68.

In this case, defendant argues that the trial court's instruction to the jury regarding the consequences of a guilty except for insanity verdict "unconstitutionally directs and suggests to the jury that you should and could consider the disposition of the charge in its deliberations." Thus, the "right" in question is defendant's right that the jury not be permitted to consider the possible consequences of its verdict. However, to be in violation of due process, that right must be one that violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions." *Dowling v. United States*, 493 US 342, 353, 110 S Ct 668, 107 L Ed 2d 708 (1990) (citations omitted); *see Donnell v. DeChristoforo*, 416 US 637, 643, 94 S Ct 1868, 40 L Ed 2d 431 (1974) (explaining that "not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental

fairness essential to the very concept of justice' " (quoting *Lisenba v. California*, 314 US 219, 236, 62 S Ct 280, 86 L Ed 166 (1941)).

It is the common-law rule in every state and federal court that the jury should not consider what sentence might be imposed in reaching its verdict. *See Shannon v. United States*, 512 US 573, 114 S Ct 2419, 129 L Ed 2d 459 (1994). However, no court that I am aware of has been presented with the issue of whether that common-law rule constitutes a fundamental right requiring constitutional protection. Simply because every jurisdiction follows the common-law rule does not mean it would be a violation of due process for a state to pass a law that allows a jury to consider the consequences of its verdict. *See, e.g., Leland v. Oregon*, 343 US 790, 72 S Ct 1002, 96 L Ed 1302 (1952) (upholding an Oregon law, on due process grounds that required that a defendant prove the defense of insanity beyond a reasonable doubt even though Oregon was the only state that required that burden of proof).

Ultimately, I am not convinced that the right in question here either is or is not a fundamental one. It may be. The majority opinion, however, finds the instruction unconstitutional without first even addressing the issue. That is a fundamental error in the majority opinion.

Assuming that it is a fundamental right, the next question is whether there is a "reasonable likelihood" that the jurors applied the instructions in a manner that violated due process. In *Victor,* the Court first pointed out that due process requires the government prove beyond a reasonable doubt every element of a charged offense, *see Winship*, 397 US at 364 (holding that the reasonable doubt standard is a fundamental right), and then proceeded to identify the issue as whether the instruction given in that case violated that right. The test formulated by the Court was whether there was a "reasonable likelihood" that the jurors who decided the defendant's guilt applied the instructions in a manner that violated due process.[2] 511 US at 4. In other words, when an

---

[2] In *Victor v. Nebraska*, 511 US 1, 114 S Ct 1239, 127 L Ed 2d 583 (1994), the court acknowledged some confusion over whether the test was whether the jury "could have" applied the instruction unconstitutionally, or whether there was a

instruction is examined as to whether it implicitly violates an established fundamental right, it is not enough that the instruction "may have" or "could have" been interpreted in an unconstitutional manner. But rather, it must be reasonably likely that it *was* interpreted in that manner.[3]

The "reasonable likelihood" test has not been limited to jury instructions defining reasonable doubt. In *Boyde v. California,* 494 US 370, 380, 110 S Ct 1190, 108 L Ed 2d 316 (1990), the challenged instruction was alleged by the defendant to be ambiguous and subject to an erroneous interpretation precluding the jury from considering constitutionally relevant evidence. The Court held: "We think the proper inquiry in such a case is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Id.* at 381. Federal and state courts also apply the "reasonable likelihood" test. *See, e.g., Smith v. Horn,* 120 F3d 400, 411 (3rd Cir 1997) (applying the "reasonable likelihood" test to an instruction held to allow conviction by the state without proving intent beyond a reasonable doubt); *State v. Lohmeier,* 205 Wis2d 183, 193, 556 NW2d 90 (1996) ("We conclude that the proper standard for Wisconsin courts to apply when a defendant contends that the interplay of legally correct instructions impermissibly misled the jury is whether there is a reasonable likelihood that the jury applied the challenged instructions in a manner that violates the constitution."); *Petition of Benn,* 134 Wash2d 868, 952 P2d 116 (1998) (applying the reasonable likelihood test).

---

"reasonable likelihood" that it did apply it unconstitutionally. The court reaffirmed *Estelle v. McGuire,* 502 US 62, 112 S Ct 475, 116 L Ed 2d 385 (1991), in finding that "reasonable likelihood" was the correct test. *Victor,* 511 US at 4. In *State v. Williams,* 313 Or 19, 828 P2d 1006, *cert den* 506 US 858, 113 S Ct 171, 121 L Ed 2d 118 (1992), the Oregon Supreme Court applied the "could have" test. There, however, the court relied on *Cage v. Louisiana,* 498 US 39, 111 S Ct 328, 112 L Ed 2d 339 (1990), which was overruled by *Victor.*

[3] For example, if Oregon passed a law that explicitly provided that a criminal defendant may be convicted by a preponderance of the evidence, that would be, *per se,* a violation of due process because the reasonable doubt standard is a fundamental right. However, if Oregon passed a law defining reasonable doubt, that instruction could only be successfully challenged if the court finds that there is a "reasonable likelihood" that the jury applied the instruction in a way that allowed for conviction based on a lower standard.

Additionally, in applying the "reasonable likelihood" test, the Court has consistently stressed that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Boyde*, 494 US at 378. Thus, the precise legal issue in this case should be, assuming there is a fundamental right in question, whether there is a reasonable likelihood that the jurors applied the instructions as a whole in a way that the possible consequences of its verdict were considered.

In this case, 29 pages of jury instructions were read and provided to the jury, including the consequences instruction in question here. Those instructions included:

"Do not consider what sentence might be imposed by the Court if this defendant is found guilty."

"Do not allow bias, sympathy or prejudice any place in your deliberations. Do not decide this case on guesswork, conjecture or speculation."

To hold that there is a "reasonable likelihood" that this jury applied the instructions in an unconstitutional manner, by considering the consequences of its verdict, would require a finding that the jury ignored both these charges. However, both the United States Supreme Court and the Oregon Supreme Court have repeatedly held that juries are assumed to follow the instructions. *See, e.g., State v. Walton*, 311 Or 223, 250, 809 P2d 81 (1991); *Greer v. Miller*, 483 US 756, 766 n 8, 107 S Ct 3102, 97 L Ed 2d 618 (1987); *but see Simmons v. South Carolina*, 512 US 154, 171, 114 S Ct 2187, 129 L Ed 2d 133 (1994) (reaffirming general rule but saying "[W]e have recognized that in some circumstances 'the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitation of the jury system cannot be ignored.' " (quoting *Bruton v. United States*, 391 US 123, 135, 88 S Ct 1620, 20 L Ed 2d 476 (1968)).

In this case, we should abide by that general rule and assume that the jury followed the instructions and did not consider the possible consequences of its verdict. It follows that there is not a "reasonable likelihood" that this jury

applied the instructions given in this case, viewed as a whole, in an unconstitutional manner.

The majority opinion relies solely on the 'fundamental fairness" test for due process.[4] While far more basic, and I believe wrong in this case, even under that test the instructions given were not unconstitutional. The remainder of this dissent is based on the premise that a fundamental fairness approach is the correct test. As a preliminary matter, however, further explanation of the meaning of fundamental fairness is warranted. Aside from those rights specifically enumerated in the Bill of Rights, the category of infractions that violate fundamental fairness is very narrow. *See Dowling*, 493 US at 353. I agree with Judge DeMuniz's dissent in *State v. Cookman*, 127 Or App 283, 296, 873 P2d 335 (1994), *aff'd* 324 Or 19, 920 P2d 1086 (1996), that to declare a statute unconstitutional requires more than it being "just not fair." To be *fundamentally* unfair, the instruction must "violate[ ] those fundamental conceptions of justice that lie at the base of our civil and political institutions,' and that define the community sense of fair play and decency.' " *Dowling*, 493 US at 353 (citations omitted). Furthermore, in order to declare a denial of fundamental fairness, "we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *State v. Huffman*, 65 Or App 594, 602, 672 P2d 1351 (1983) (quoting *United States v. Valenzuela-Bernal*, 458 US 858, 872, 102 S Ct 3440, 73 L Ed 2d 1193 (1982)).

With this understanding of fundamental fairness, the majority opinion implicitly holds that: (1) a jury instruction that defines the statutorily mandated procedures that attach to a defendant on a finding of guilty except for insanity violates those fundamental conceptions of justice that lie at the base of our civil and political institutions; (2) the jury

---

[4] The majority opinion cites *State v. Tucker*, 315 Or 321, 845 P2d 904 (1993), in support of its use of the fundamental fairness test. However, in that case, the question was whether the trial court's refusal to give a requested instruction violated the defendant's fundamental right to be presumed innocent. *Id.* at 336. As stated, when the question is the constitutionality of a given instruction, the Supreme Court has adopted the "reasonable likelihood" test.

instruction fatally infected the trial; and (3) the jury instruction necessarily prevented a fair trial. I disagree.

The majority opinion is correct that no court has specifically addressed the question of whether giving a consequences instruction over the objection of a defendant violates due process. However, that is not surprising given the almost universal agreement that a consequences instruction benefits the defendant.[5] In fact, the only constitutional challenges I am aware of stem from trial courts' *failure* to instruct the jury on the consequences.

In *Bassik v. Scully*, 588 F Supp 895 (EDNY 1984), the defendant argued that due process imposes a general requirement that a jury be informed of the consequences of an insanity verdict. The court held that a federal court should not "blithely assume that there is a high probability that state juries will disregard their oaths and their duty to render a verdict on the basis of the evidence and the law" and that "[i]n view of the weighty factors militating both in favor of and against the use of the charge, we believe that it is **clear** that the Constitution leaves the states free to decide for themselves whether or not to employ such a charge." *Id.* (emphasis supplied). Likewise, in *Boykins v. Wainwright*, 737 F2d 1539 (11th Cir 1984), *cert den* 470 US 1059 (1985), the defendant, on a petition for writ of habeas corpus, asserted that he was afforded a fundamentally unfair trial because the trial judge failed to instruct the jury on the consequences of an insanity verdict. The court held that, although the trial court's refusal was error pursuant to Florida law, the error did not violate fundamental fairness. *Id.* at 1546. Finally, in *Campbell v. Bates*, 416 F Supp 1111 (D Mass 1976), in response to a due process argument by the defendant over the failure of the trial court to give a consequences instruction, the court held "there does not appear to be a constitutional underpinning to this argument." *Id.* at 1111. Noticeably, in each case the defendant had requested the consequences instruction.

[5] ORS 161.313 was introduced at the request of the Oregon Criminal Defense Lawyers Association. Minutes, Senate Judiciary Committee, June 29, 1983, at p 7.

Not surprisingly, out of the hundreds of cases dealing with the appropriateness of consequences instructions, all but two, that I am aware of, are the result of a defendant assigning error to the trial court's failure to instruct the jury.[6] Interestingly, in one of those cases, the court found that it was error to give the instruction over the objection of the defendant but proceeded to hold that it was harmless error. *See Goad,* 364 NW2d at 592. What the Michigan Supreme Court saw as "harmless error" the majority opinion sees as fundamentally unfair. The bottom line is that a consequences instruction is for the benefit of the defendant and the integrity of the jury system. To put this into context, it is essential to understand the evolution of consequences instructions in both state and federal law.

The majority opinion posits that

> "the basic rule in Oregon and in most, if not all, other jurisdictions has been that the sentence that a defendant will receive if convicted, and the disposition that will be made of a defendant who is found to have a mental disorder, are not matters for the jury's consideration, and juries should not be instructed regarding them." 154 Or App at 595-96.

That is only partially correct and, at best, misleading.

It is true, as I have stated, that every jurisdiction follows the rule that the disposition of a defendant after a verdict should not be a *consideration* of the jury. However, that does not mean that a jury should not be made *aware* of the consequences of an insanity verdict. That a jury is aware of the consequences of its decision does not necessarily mean it considered those consequences in reaching its verdict. For

---

[6] *See State v. Huiett,* 271 SC 205, 246 SE2d 862 (1978) and *People v. Goad,* 421 Mich 20, 364 NW2d 584 (1984). In *Huiett,* defendant was charged with murder for killing a man with an ax. His only defense was insanity. A first trial resulted in a mistrial after a jury was unable to reach a verdict. A second trial was held before the same judge. Unlike the first trial, the judge instructed the jury that if the defendant was found mentally ill, he would be transferred to the state hospital for observation and if the defendant was then or subsequently found not to be mentally ill, he would be released. During that short charge, the trial judge used the word "released" four times and "set free" once. The jury deliberated thirteen minutes and returned a verdict of guilty. The court found, within the facts of that case and with emphasis on the language used, that giving the instruction over the objection of defendant was reversible error.

example, most jurors recognize that a finding of "not guilty" means an accused goes free. A juror's knowledge of that does not indicate it was considered. Informing the jurors of the consequences is actually an attempt to keep jurors' ignorance as to those consequences from becoming an impermissible consideration in their decision. In other words, the purpose of the consequence instruction is to achieve the goal that juries will not improperly speculate about the consequences. *See U.S. v. Frank*, 956 F2d 872, 883 (9th Cir 1991), *cert den* 506 US 932 (1992) (Hug, J., dissenting) (arguing that "an instruction on the consequences of the verdict preserves, rather than taints or disrupts, the traditional [rule]").

A further indication that a consequences instruction is for the benefit of the defendant and the integrity of the jury system is found in recommendations of the American Bar Association. Standard 7-6.8 of the ABA's Criminal Justice Mental Health Standards provides: "The court should instruct the jury as to the dispositional consequences of a verdict of not guilty by reason of mental nonresponsibility * * *." In commentary, the ABA explained its reasoning:

> "[D]espite instructions cautioning them to consider only the evidence they have heard, jurors who are not informed about dispositional consequences will speculate about the practical results of a nonresponsibility verdict and, in ignorance of reality, will convict persons who are not criminally responsible in order to protect society. Jurors surely know, without being told, what happens to most convicted offenders, as well as defendants who are acquitted outright; the proposed instruction provides the same level of knowledge with respect to the fate of persons acquitted by reason of mental nonresponsibility * * *.

> "*[C]ommon sense and policy considerations must provide guidance.* Providing for an instruction seems the most sensible approach given the potential for prejudice to defendants when the alternative course is followed. Particularly in cases in which defendants are charged with violent crimes * * *, juries need to be told about the effect of a finding of mental nonresponsibility if the possibility of a serious injustice is to be avoided." *Id.* (emphasis supplied).

The growing majority trend appears to agree substantially with the ABA's position. For instance, no state or

federal district, that I am aware of, flatly prohibits a consequences instruction.[7] At least 20 states have held that it is not reversible error to refuse to give a consequences instructions.[8] *See generally* 81 ALR4th 659, *Instructions in State Criminal Case in which Defendant Pleads Insanity as to Hospital Confinement in Event of Acquittal*, Thomas M. Fleming, J.D. (1990). At least 25 states allow the instruction in one form or another. *See id.; Shannon v. United States*, 512 US at 592 (Stevens, J., dissenting). For example, in California, overruling earlier precedent, the rule is that the instruction must be given if requested by the defendant. *People v. Moore*, 166 Cal App 3d 540, 211 Cal Rptr 856 (1985); *People v. Dennis*, 169 Cal App 3d 1135, 215 Cal Rptr 750 (1985). Likewise, Colorado reversed earlier precedent and now allows the instruction if requested by a defendant. *People v. Thomson*, 197 Colo 232, 591 P2d 1031 (1979). Following the same trend, Maryland now allows the instruction when requested by a defendant. *Erdman v. State*, 315 Md 46, 553 A2d 244 (1989).

Five states that I am aware of statutorily require that a consequences instruction be given: Georgia, Kansas, New York, Oregon and Tennessee. *See* Ga Code Ann § 17-7-131(b)(3) (Michie 1997); Kan Stat Ann § 22-3428(6) (1997); N Y Criminal Procedure Law § 300.10 (McKinney 1998); ORS 161.313; Tenn Code Ann § 33-7-303(e) (1997); Two states require an instruction if requested by the defendant: Hawaii and Missouri. *See* Haw Rev Stat § 704-402(2) (1997); Mo Rev Stat § 552.030(6) (1997).

In sum, at least half the states either allow or require a consequences instruction. Interestingly, not one of the states that does not allow a consequences instruction has indicated that it is because of any prejudicial effect to the defendant. The rationale, however, behind those states which condone the use of a consequences instruction is instructive. The Utah Supreme Court held:

---

[7] Even in states and federal districts where consequences instructions have been held to not be required, they are generally allowed in response to prosecutorial or court comments which inappropriately comment on the possibility that a defendant may go free if found insane. Again, strong indication that consequences instructions are for the benefit of the accused.

[8] It is important to recognize that a court holding no error in refusing the instruction is not the same as holding that it is error to give the instruction.

"We are convinced that the risk * * * is substantial, *i.e.*, that a jury may ignore the evidence of insanity if the jury misunderstands the consequences of a verdict of not guilty by reason of insanity and focuses instead on the fear that such a verdict will result in releasing a dangerous person to prey upon society. Freed from confusion and fear as to the practical effect of a verdict of not guilty by reason of insanity, jurors should be able to decide the insanity issue solely on the evidence and law governing the defense." *State v. Shickles*, 760 P2d 291, 298 (Utah 1988).

In Maryland, the Court of Appeals held that "the interests of justice, *fundamental fairness*, common sense, and the weight of authority in those jurisdictions which mandate commitment, support that a dispositional instruction be permitted." *Erdman*, 553 A2d at 250 (emphasis supplied).

The bottom line, evident from an examination of law from other states, clearly indicates an almost universal belief that a consequences instruction is for the benefit of the accused. The fact that some states have failed to extend that benefit to criminal defendants gives no weight to the majority opinion's assertion that a consequences instruction, over defendant's objection, is unconstitutional.[9] In fact, no court has even hinted that the issue raises a constitutional question. Federal law is equally unhelpful to the majority opinion.

The majority opinion's reliance on *Shannon* is misplaced. *Shannon* held *only* that a consequences instruction is not required. In doing so, the Court reaffirmed the well established common-law rule that "juries are not to consider the consequences of their verdicts." *Id.* at 579. However, the Court clearly indicated that under its supervisory powers it could require a consequences instruction and that "Congress certainly could have included a provision requiring the instruction Shannon seeks." *Id.* at 587.[10]

---

[9] Granted, however, that the opinions and recommendations so far cited in this dissent do not prove that it is constitutional. However, they are instructional as to whether it is fundamentally unfair.

[10] When Congress passed the Insanity Defense Reform Act of 1984, 18 USC §§ 4241-4247, it clearly indicated its expectation that juries could be instructed on the consequences of an insanity verdict.

"The Committee endorses the procedure used in the District of Columbia whereby the jury, in a case in which the insanity defense has been raised, may

The majority opinion relies on *Shannon* for its contention that a consequences instruction is a two-edged sword. Specifically, it quotes from *Shannon*: "Instead of encouraging a juror to return an NGI verdict, as Shannon predicts, such information might have the opposite effect—that is, a juror might vote to convict in order to eliminate the possibility that a dangerous defendant could be released after *40 days or less*." *Id*. at 586 (emphasis supplied). That language, however, is dependent on federal law where a post-verdict hearing must be held within 40 days to determine whether the defendant should be released immediately into society or hospitalized. *See* 18 USC § 4243(c), (d). Because of that requirement of federal law, the Court noted that an accurate instruction, which included the preceding federal law, would give no assurance that a violent defendant found insane would not go free in the very near future. *Id*. at 585-86. In other words, the Court recognized the purpose of a consequences instruction, but held that because of the requirements of federal law, that purpose could not be realized. Following that reasoning, the Court concluded that "[u]nder these circumstances, we are reluctant to depart from well-established principles of criminal practice without more explicit guidance from Congress." *Id*. at 587.

*Shannon* stands only for the propositions that a consequences instruction is not required. Recognizing that its holding is dependent on the unique provisions of federal statutory law, I see absolutely no support in *Shannon* that an instruction given pursuant to state statutory law is unconstitutional. At best, *Shannon* stands for the proposition that a consequence instruction may not accomplish its goal.

The majority's reliance on Oregon precedent is equally unpersuasive. For instance, the majority opinion cites *State v. Daley*, 54 Or 514, 103 P 502 (1909). In that case, the defendant requested an instruction that would have informed the jury that he would be committed to a lunatic

---

be instructed on the effect of a verdict of not guilty by reason of insanity. If the defendant requests that the instruction not be given, it is within the discretion of the court whether to give it or not." S Rep No 225, 98th Cong, 1st Sess (1983), 240.

The Court, however, relied on the plain language of the Act to hold that a consequences instruction was not required.

asylum if found insane. The judge refused that request. The defendant argued that the jury may have been induced to return a verdict of guilty because of possible misconceptions that a verdict of insanity might discharge him into the community. The court held that "no error is committed in refusing to instruct them what the penalty might be." *Id.* at 523. Two points from *Daley* are relevant: First, the defendant requested the instruction; second, the court ruled only that refusing to give the instruction was not error.

Likewise, in *State v. Wall*, 78 Or App 81, 715 P2d 96 (1985), the question was whether the admission of evidence elicited by the state concerning the disposition of persons found not guilty by reason of insanity prejudiced the defendant. There, the prosecutor, during questioning of a psychiatrist and over objection of the defendant, elicited responses concerning the likelihood that defendant would be released at some point if found not to have an active mental illness. We held that this was error. In *dictum,* we stated that "it is proper for the court to refuse a defendant's request to charge the jury regarding the disposition of the defendant in the event of a verdict of not guilty by reason of mental disease or defect." *Wall,* 78 Or App at 84-85. It is important to recognize what *Daley* and *Wall* did not hold. They did not hold that it would be error for the trial court to give a consequences instruction. Both simply followed the common-law rule. The Oregon Legislature superseded that common-law rule by enacting ORS 161.313, which it has the power to do. The question before us is not whether the legislature made a wise choice, but whether it made an unconstitutional choice.[11]

---

[11] It is clear to me that the instruction given in this case, pursuant to Uniform Criminal Jury Instruction No. 1122, is not the model of clarity and is probably too long and inclusive. ORS 161.313 simply requires that the jury be instructed "in accordance with ORS 161.327." The instruction is taken verbatim from ORS 161.327. In my opinion, a better instruction would paraphrase and synthesize that statute into a more "jury friendly" instruction. An instruction similar to that given in Georgia would be preferable. Section 17-7-131(b)(3) of the Georgia Code Annotated provides:

"In all cases in which the defense of insanity is interposed, the trial judge shall charge the jury, in addition to other appropriate charges, the following: (B) I charge you that should you find the defendant guilty but mentally ill at the time of the crime, the defendant will be given over to the Department of Corrections or the Department of Human Resources, as the mental condition of the defendant may warrant."

Ultimately, in answering that question, we are left to examine fundamental conceptions of justice aided by analogous case law. Most relevant is *Lakeside v. Oregon*, 435 US 333, 98 S Ct 1091, 435 L Ed 2d 319 (1978). In *Lakeside*, the defendant was charged with escape in the second degree. During his jury trial, the defendant did not testify. Over objection of the defendant, the trial court instructed the jury that it was to make no inferences from his failure to testify. The objection asserted that commenting on his failure to testify was like "waving a red flag in front of the jury." *Id.* at 322.

Originally, this court reversed defendant's conviction, holding that "the better rule is to not give instructions ostensibly designed for defendant's benefit over the knowledgeable objection of competent defense counsel." *State v. Lakeside*, 25 Or App 539, 542, 549 P2d 1287 (1976). The Oregon Supreme Court reversed finding that giving the instruction over the defendant's objection did not violate his constitutional rights. *State v. Lakeside*, 277 Or 569, 561 P2d 612 (1977). The United States Supreme Court affirmed.

The defendant's argument in *Lakeside* was expressed by the Supreme Court in similar fashion to defendant's argument here:

"The [defendant] in the present case does not question [that in Oregon, a defendant has an absolute right to require an instruction that the jury should draw no inferences from his failure to testify], nor does he assert that the instruction actually given was in any respect an erroneous statement of the law. His argument is, quite simply, that this protective instruction becomes constitutionally impermissible when given over the defendant's objection." 435 US at 338.

The Court noted that the purpose of the instruction is to "remove from the jury's deliberations any influence of unspoken adverse inferences. It would be strange indeed to conclude that this cautionary instruction violates the very constitutional provision it is intended to protect." *Id.* at 339. The Court opined that the defendant's argument would require indulgence in two doubtful assumptions. First, that the jury would not have noticed that he did not testify; and second, that the jury would "totally disregard" the instruction's charge that "such a circumstance gives rise to no inference or

presumption against the defendant, and this must not be considered by you in determining the question of guilt or innocence." *Id.* at 322, 325. The Court concluded that "[f]ederal constitutional law cannot rest on speculative assumptions so dubious as these." *Id.* at 326.

The majority opinion dismisses the relevance of *Lakeside* because: "Unlike the instruction here, only one implication could be found in the terms of that instruction." 154 Or App at 602 n 6. Obviously, the defendant in *Lakeside* thought otherwise. I fail to see how "waiving a red flag in front of the jury," pointing to the fact that defendant did not testify, is any less of a two-edged sword. The similarities between *Lakeside* and this case should not be so lightly dismissed.

Additionally, the mere fact that there is a potential for prejudice against defendant does not automatically implicate due process. For instance, in *Spencer v. Texas*, 385 US 554, 87 S Ct 648, 17 L Ed 2d 606 (1967), Texas law required that, pursuant to its recidivist or habitual-criminal statutes, when a jury was read an indictment against a defendant, that indictment must include any prior convictions of the defendant. In that case, the defendant[12] was indicted for murder. The indictment, read to the jury, alleged that he had previously been convicted of murder with malice. Later, the jury was instructed that it should not consider the prior conviction as evidence of the defendant's guilt in the case for which he was being tried.

There, the Court acknowledged that the challenge was based on a "general 'fairness' approach." *Id.* at 565. The Court said:

"[W]e find it impossible to say that because of the possibility of some collateral prejudice the Texas procedure is rendered unconstitutional under the Due Process Clause as it has been interpreted and applied in our past cases. As Mr. Justice Cardozo had occasion to remark, *a state rule of law 'does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or*

---

[12] The opinion in *Spencer* combined three separate appeals from the Texas statute. For our purposes it is not necessary to present the separate facts of each case.

*wiser or to give a surer promise of protection to the prisoner at bar.'* " *Id.* at 564 (quoting *Snyder v. Massachusetts,* 291 US 97, 54 S Ct 330, 78 L Ed 674 (1933) (emphasis supplied)).

The Court also noted that a jury is expected to follow limiting instructions and in limiting the scope of evidence to its proper function. *Id.* at 562. On that issue, it said:

"It would be extravagant in the extreme to take Jackson[13] as evincing a general distrust on the part of this Court of the ability of juries to approach their task responsibly and to sort out discrete issues given to them under proper instruction by the judge in a criminal case, or as standing for the proposition that limiting instructions can never purge the erroneous introduction of evidence or limit evidence to its rightful purpose." *Id.* at 565.

The Court acknowledged that the introduction of the past convictions was prejudicial to the defendant. *Id.* at 563-64. However, it justified that prejudice because the jury is presumed to heed limiting instructions and there was a valid governmental interest—enforcement of habitual offender statutes. *Id.* at 563.

In this case, the consequences instruction is justified for similar reasons. The jury was given a limiting instruction and there is a valid governmental interest. Here, the state has a valid interest in making sure that juries do not reject insanity defenses based on their own ignorance and fear as to the consequences of an insanity verdict. It cannot be rationally argued that a consequences instruction is remotely as prejudicial to a defendant as informing a jury of past convictions of the same defendant.

Important to the decision in both *Lakeside* and *Spencer*, the Court noted its belief and faith that juries can and do heed limiting instructions. Here, as stated, the trial court instructed the jury that it could "not consider what sentence might be imposed by the Court if this defendant is

---

[13] The court was distinguishing the case of *Jackson v. Denno*, 378 US 368, 84 S Ct 1774, 12 L Ed 2d 908 (1964), which held unconstitutional a New York law that allowed the trial jury alone to decide the issue of voluntariness of a challenged confession.

found guilty" and "do not decide this case on guesswork, conjecture or speculation." Defendant's defense was guilty except for insanity, thus, the court instructed the jury not to consider the consequences of that verdict in its deliberations. Because we presume that the jurors in this case did not consider any possible sentences associated with a guilty verdict in its deliberations, it follows that the rejection of the insanity plea and ultimate conviction was based on the evidence.

The majority relies on *Wall* to assert that such a limiting instruction was inadequate. However, the facts of *Wall* are distinguishable. In that case, the following colloquy occurred between the prosecutor and the state's psychologist:

"[Prosecutor]: Doctor, you're aware that the state of Oregon must prove after a finding of not responsible because of mental disease or defect that there is an active mental illness in operation to be able to confine a person, are you not?

"[Doctor]: Yes.

"[Prosecutor]: Consequently, if there is no active mental illness, a defendant is able to petition for release, is he not?

"[Doctor]: If there's no active mental illness, yes, I understand he can do that.

"[Prosecutor]: And are you aware that this Defendant has been informed of that right?

"[Doctor]: I do not know that.

"[Prosecutor]: That would be a motive to want to have a proper mental disease or defect defense, would it not?

"[Doctor]: If a person really is quite familiar with the law, with the medicine, I can imagine, yes, that would be a motive." *Wall*, 78 Or App at 83-84.

Considering that exchange, a limiting instruction was certainly too little, too late. However, it clearly demonstrates the reason for Oregon's acceptance of the common-law rule that a jury should not consider the consequences of its verdict. It is situations similar to *Wall* that justifies the common-law rule. However, the majority opinion uses a common-law rule

adopted for the benefit of defendants, combines it with a statutory law enacted for the benefit of defendants, and holds that that law violates the due process of those exact defendants both laws are aimed at protecting. I cannot concur in that result.

With this background in mind, we turn to whether ORS 161.313 was fundamentally unfair to defendant. The first question is whether this instruction " 'violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions." ' " *Dowling*, 493 US at 353. I think the only rational answer is that it does not. The instruction is for the benefit of the defendant and preserves the integrity of the jury system. The majority opinion asserts that a consequences instruction is a two-edged sword.[14] However, most criminal procedures, by their very nature, are two-edged swords. Each time a trial court balances the probative value of evidence against the possibility of prejudice to the defendant, the trial court teeters on the edge of a two-edge sword. The integrity of the system depends on the fair balance between the right of society to be safe and the defendant's right to a fair trial. Ultimately, the goal is a verdict based on the facts and a correct understanding of the law. There is no evidence suggesting that this verdict was not based on the facts and no claim that the instruction misstated the law. I believe this instruction falls within the necessary balance and did not violate defendant's fundamental rights.

The second question is whether the instruction "fatally infect[ed] the trial" and "necessarily prevented a fair trial." *See Huffman*, 65 Or App at 602. Again, the only rational answer is that it did not. Defendant points to no actual prejudice or even an appearance of prejudice. Additionally, pursuant to state law we presume that the jury in this case did not consider the consequences of its decision

---

[14] The only real support for the majority opinion's belief that a consequences instruction might prejudice the defendant is *Shannon*. However, that decision was dependant on federal commitment procedures which, if explained to the jury, might leave the jury with an impression that the defendant might go free in 40 days. The instruction in this case does not infer such prejudice. Furthermore, even in *Shannon*, the Court suggested that Congress has the power to require a consequences instruction.

because it was instructed not to. In my opinion, to rule this statute unconstitutional, we must ignore settled law, ignore rational and well reasoned opinions from other jurisdictions, and most unfortunately, ignore common sense.

I dissent.

Edmonds and Landau, JJ., join in this dissent.